Geoffrey L. BILDA and Virginia Schumann, Individually, and as representatives of a class consisting of all members, participants, retirees and beneficiaries of the ERS in any given year that its administrative and operational expenses were paid for with its funds, including, but not limited to, all retirees and beneficiaries currently receiving benefits from the ERS, former employees of Milwaukee County who have an interest in the ERS but are not yet receiving benefits from it and all current employees of Milwaukee County that are members of the ERS regardless of whether their interest in the ERS has vested, Plaintiffs-Appellants,†

v.

COUNTY OF MILWAUKEE, Wisconsin, and Milwaukee County Employes' Retirement System Pension Board, Defendants-Respondents,

WISCONSIN COUNTIES MUTUAL INSURANCE COMPANY, Intervenor.

Court of Appeals

*No. 2004AP2539. Submitted on briefs August 10, 2005. —Decided March 23, 2006.*

2006 WI App 57

† Petition to review denied 6-14-06.

(Also reported in 713 N.W.2d 661.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John F. Fuchs* of *Fuchs, DeStefanis & Boyle, S.C.*, Milwaukee; *Eugene O. Duffy* and *Kerry E. Dwyer* of *O'Neil, Cannon, Hollman, DeJong, S.C.*, Milwaukee.

On behalf of the defendant-respondent County of Milwaukee, the cause was submitted on the briefs of *Alan M. Levy* of *Lindner & Marsack, S.C.*, Milwaukee.

On behalf of the defendant-respondent Milwaukee County Employes' Retirement System Pension Board, the cause was submitted on the briefs of *Emery K. Harlan, Brian A. Price*, and *Erin C. Hughes* of *Gonzalez, Saggio & Harlan, L.L.P.*, Milwaukee.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J. Geoffrey Bilda and Virginia Schumann, class representatives for "members, participants, retirees and beneficiaries" of the Milwaukee County Employes' Retirement System, appeal a judgment that dismissed their action seeking compensation from and declaratory relief against Milwaukee County and its Employes' Retirement System Pension Board.[1] Bilda claims that a 1992 change in the way in which retirement fund administrative expenses are paid contravenes applicable state legislative enactments and constitutes a taking of property for a public purpose without just compensation, in violation of the Wisconsin Constitution. On cross-motions for summary judgment, the circuit court concluded that the 1992 change did not "diminish or impair . . . benefits or other [par-

[1] We refer to the plaintiffs-appellants as Bilda and to the defendants-respondents, collectively, as the County.

We also note that, prior to the 1999–2000 version, the Wisconsin Statutes generally referred to one who works for another as an "employe," rather than an "employee." In a Revisor's Correction Bill that became 1999 Wis. Act 185, the term "employee" was adopted to replace "employe" wherever it appeared in the statutes, although the legislature also decreed that "any person may use either spelling . . . for any official purpose." *See id.*, § 193. Unlike the spell-checker on this court's word-processing program, many dictionaries recognize "employe" as a proper alternative spelling. *See, e.g.,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743 (2002). The Milwaukee County ordinance governing the pension and retirement system for county workers continues to utilize the older statutory spelling. We will also do so when quoting from the older legislative enactments and the ordinance, and when referring to the pension board by its full title. Otherwise, we will adopt the spelling now utilized in the statutes.

ticipant] rights" and, thus, did not violate the quoted legislative limitation on the County's "home rule" over its retirement system. The court also concluded that there had been no taking of the plaintiffs' property, and, accordingly, no constitutional violation. The circuit court granted summary judgment to the County and dismissed the action with prejudice. We affirm the judgment doing so.

## BACKGROUND

¶ 2. Milwaukee County administers a retirement system for its employees that is separate and distinct from the State of Wisconsin Retirement System established and governed under Wis. Stat. ch. 40 (2003–04).[2] Prior to 1965, however, the State Legislature, through a series of session laws beginning with 1937 Wis. Laws, ch. 201, directed how the Milwaukee Employe Retirement System was to be administered. The system provides retirement, disability and death benefits to participating county employees. It is administered by a pension board made up of employees and county board designees. 1937 Wis. Laws, ch. 201; § 8(5), directed the pension board to maintain a separate "Expense Fund," to which "shall be credited all money provided by the county to pay the administration expenses of the retirement system, and from which shall be paid all the expenses necessary in connection with the administration and operation of the system." *Id.* The board was also directed to "[a]nnually . . . estimate the amount of money which shall be deemed necessary to be paid into the expense fund during the ensuing year for the

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

expenses of operation of the retirement system, and such amount shall be paid to the expense fund for this purpose by the county." *Id.*

¶ 3. In 1965, the legislature granted the County "home rule" over its employee retirement system. The legislation provided:

> Each county which is required to establish and maintain a retirement system pursuant to this act is hereby empowered by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no change shall operate to diminish or impair the annuities, benefits, or other rights of any person who is a member of such retirement system prior to the effective date of any such change.

1965 Wis. Laws, ch. 405, § 2. In addition, "for the further purpose of safeguarding the stability" of the Milwaukee County Employe Retirement System, ch. 405 directed the creation of a "pension study commission" in Milwaukee County "to have jurisdiction over all proposed changes" to the system. *Id.* The legislature charged the commission to "advise the county board as to the actuarial effect and the cost implications of all proposed changes," with a further directive that "[n]o change in [the] retirement system shall be considered by the county board until it has been referred to the commission . . . and until said commission has submitted a written report on the proposed change." *Id.*

¶ 4. Milwaukee County responded to the "home rule" legislation by enacting Chapter 201 of the county ordinances, which sets out provisions for administering the Employes' Retirement System, largely incorporating those enacted by the legislature in session laws since 1937. As originally enacted, the county ordinance

217

specified that "all expenses in connection with the administration and operation of the retirement system are hereby made obligations of the County." In 1992, however, the County amended its ordinance to provide that "all expenses in connection with the administration and operation of the retirement system are hereby made obligations of the retirement system." The circuit court stated in its summary judgment decision that "[t]hereafter, [the retirement system] paid for its own administrative expenses and the County made annual contribution payments which were and are actuarially sufficient to pay the costs of . . . benefit obligations as well as . . . administration," a fact which Bilda does not dispute.[3]

---

[3] The actuary for the Milwaukee County Employe Retirement System averred in an affidavit as follows:

> For many years, the County has paid for some of the administrative expenses of the [system] as part of the annual contribution it makes to assure the payment of benefits. Thus, the [system] makes payments for its own operation, and the County makes contribution payments at a level which, over time and with net investment income, will pay for both benefits and those administrative expenses. In effect, the [system] is the paymaster for its administrative expenses, and the County reimburses those payments through its annual contributions.

The actuary further explained in the affidavit that "[w]hen the contribution payment is at variance with actual needs, that surplus or shortfall is amortized over five (5) years," and that "[i]f the administrative expenses had been paid directly by the County, the annual contribution payment simply would have been less." In a subsequent affidavit, the actuary clarifies that "it is possible that in any given year Milwaukee County's annual contribution will not include, *in that year,* payment for all of the administrative expenses which the [system] incurred in the previous year . . . . However, . . . over time Milwaukee County indirectly pays all of the administrative expenses of [the system]."

¶ 5. Prior to the County Board's adoption of the 1992 ordinance amendment regarding the payment of administrative expenses, the Milwaukee County Pension Study Commission met to consider the proposed amendment and an actuarial report regarding it. The minutes of its meeting indicate that the commission received input from County human resources personnel, as well as from members of the pension board, its attorney and its actuary. The minutes reflect that the actuary informed the pension study commission that

there are adequate funds for this purpose [paying retirement system administrative expenses] and the County is making contributions to make sure that continues. He stated that he did not see that the payment of these costs each year would materially affect the funding of the plan, as long as those monies are reimbursed to the fund, over time, through additional contributions.

The commission voted unanimously to "recommend adoption of the proposed ordinance," which the Milwaukee County Board did several days later on November 5, 1992.

¶ 6. Bilda commenced this action on June 18, 2003, on behalf of a class consisting of "all persons who were or are members, retirees and beneficiaries of the Milwaukee County Employes' Retirement System in any given year that [the system] administrative and/or operational expenses were paid for with funds of [the system]." Bilda alleged that payment of administrative, operational and investment management costs directly out of system funds and/or earnings "was contrary to law and has operated to diminish or impair the annuities benefits or other rights" of class members. He also asserted that the retirement system's payment of these costs "diminished and impaired the ... rights" of class members in the

219

system's "funds and earnings of those funds and constitutes an unconstitutional taking of a substantial property interest without just compensation in violation of Article I, § 13 of the Wisconsin Constitution."

¶ 7. Bilda and the County both moved for summary judgment. The court granted the County's summary judgment motion, denied Bilda's and ordered Bilda's complaint dismissed with prejudice. Bilda appeals the subsequent judgment that dismissed the action and awarded the County statutory costs.

## ANALYSIS

¶ 8. We review the dismissal of an action on summary judgment de novo, applying the same methodology and standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *See id.* Bilda does not argue that disputed material facts preclude summary judgment. Rather, he claims the circuit erred in concluding that the County, and not he, was entitled to judgment as a matter of law.

¶ 9. Bilda challenges the County's current method of paying the administrative expenses of its retirement system on two grounds, one substantive and the other procedural. Substantively, he claims that the County's annual contribution to the retirement fund of an amount sufficient to meet the anticipated payments of benefits to system participants and the system's amortized administrative costs, instead of directly paying for administrative expenses of the system on an annual basis, violates state legislative directives and the takings

clause of the Wisconsin Constitution. His procedural claim is that the Milwaukee County Board, when it amended the County's ordinance in 1992 to establish the current method of paying system expenses, did not comply with the requirement of the "home rule" legislation, 1965 Wis. Laws, ch. 405, that "[n]o change in a retirement system shall be considered by the county board until . . . [the county's pension study] commission has submitted a written report on the proposed change." *Id.*, § 2.

¶ 10. We first address the asserted defect in enactment of the 1992 ordinance amendment. Bilda contends that "[i]t is undisputed that Milwaukee County did not comply with [1965 Wis. Laws] Chapter 405," whose provisions he claims were "mandatory" not "directory," when it amended the ordinance. He further asserts that the County's alleged failure to comply with 1965 Wis. Laws, ch. 405, when it adopted the 1992 ordinance amendment "failed to create a valid liability of the [retirement system] and the subsequent payment of expenses from the [system] trust is a taking of Plaintiffs' property." In short, Bilda would have us declare the 1992 ordinance amendment void because the pension study commission did not submit "a written report on the proposed change." He relies on several precedents that declare municipal enactments void for noncompliance with statutory mandates. *See, e.g., Scanlon v. City of Menasha*, 16 Wis. 2d 437, 444, 114 N.W.2d 791 (1962) (concluding that a resolution to sell city property was void for city's failure to first refer the matter to the plan commission as required by statute).

¶ 11. The County, however, disputes that "it did not comply with Chapter 405" when it enacted the 1992 ordinance amendment. It maintains that it complied with the requirement in 1965 Wis. Laws, ch. 405, for the

referral of a proposed retirement system change to the County Pension Study Commission and that the commission substantially complied with the requirement that it submit "a written report on the proposed change." We agree. As we have noted, several days before the county board's adoption of the amendment, the pension study commission met to consider the proposed amendment. The retirement system's actuary presented his projections to the commission and advised it that the system was adequately funded to accommodate the change in how administrative expenses were to be paid, and further that the change would not "materially affect the funding of the plan." The actuarial input and advice were noted in the commission's written minutes, as was its unanimous vote to recommend adoption of the amendment to the ordinance.

¶ 12. The legislature's express purpose for requiring that proposed changes to the County's retirement system be referred to the pension study commission and that no change be acted upon by the county board until the commission had reported its advice regarding "the actuarial effect and the cost implications" of the proposed change, was to "safeguard[] the stability of [the] retirement system[]." *See* 1965 Wis. Laws, ch. 405, § 2. We conclude that this purpose was amply served on the present facts, with the only deviation from the legislative requirements being that the commission's advice was communicated via its written meeting minutes, rather than in a separate "written report on the proposed change," labeled as such This is a vastly different circumstance than in *Scanlon*, where the city council acted without ever referring the proposed property sale to the plan commission as required by statute. As the supreme court explained in *State ex rel. Crucible*

*Steel Casting Co. v. Wisconsin Tax Comm'n*, 185 Wis. 525, 534–35, 201 N.W. 764 (1925), a legislative enactment will not be set aside for failure to conform to "the strict letter" of a procedural requirement where the "object and purpose" of the requirement has been accomplished. We therefore reject Bilda's procedural challenge to the 1992 amendment.[4]

¶ 13. We next address Bilda's substantive argument that the 1992 change in how retirement system administrative expenses are paid violates applicable legislative enactments and constitutes an unconstitutional taking of property for a public purpose. His argument proceeds roughly as follows: He and other participants in the system, whether current employees, annuitants or beneficiaries, possess a property interest in the county retirement fund as a whole. The pre-"home-rule" legislative direction that the County must directly pay the cost of administering the system still applies because of the directive in the home-rule legislation that members' rights and benefits may not be "impaired or diminished" by any subsequent County-initiated changes to the system. Bilda cites several precedents holding that state attempts to divert retirement funds held in trust for participants to other public purposes were unconstitutional.[5] He contends we must reach a similar conclusion

[4] The County also argues that Bilda's 2003 procedural challenge to the 1992 ordinance amendment comes eight years too late, citing WIS. STAT. § 889.04, which provides that, after three years, the publication of an ordinance "shall be conclusive proof of the regularity of the adoption . . . of the ordinance." Because we conclude the County complied with 1965 Wis. Laws, ch. 405, we have no need to address the timing of Bilda's procedural challenge.

[5] *See, e.g., Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 25, 558 N.W.2d 83 (1997)

here regarding the current method of paying the costs of administering the County's retirement system, notwithstanding the undisputed facts that the County's annual contributions to its retirement fund reimburse it for amortized administrative costs and no member's benefits are reduced as a result of the change in how expenses are paid.

¶ 14. When a claimant asserts a violation of the takings clause of the Wisconsin Constitution, we must first determine whether a property interest exists, and next, whether the property interest has been taken. *Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn*, 2001 WI 59, ¶¶ 132–33, 243 Wis. 2d 512, 627 N.W.2d 807. As the County observes, the analysis of whether a property

("[T]he plaintiff annuitants have a property right in the investment earnings . . . [which] includes the right to have annuity reserve surpluses distributed in a manner consistent with [the statute]"; the diversion of retirement system funds to reimburse state coffers for certain supplemental benefits paid to some annuitants "take[s] the plaintiffs' property rights for a public purpose and without just compensation."); *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 560, 563, 544 N.W.2d 888 (1996) (concluding that "vested County Plan beneficiaries have property rights in their retirement fund," notwithstanding that it is a "defined benefit plan"; that these are "protectable property interests in the integrity and security of their retirement fund"; and that the state's attempt to transfer money from the county retirement system to the state system "deprives the beneficiaries of this protectable interest" in violation of the federal constitutional right to due process); *State Teachers' Ret. Bd. v. Giessel*, 12 Wis. 2d 5, 9–10, 106 N.W.2d 301 (1960) ("[T]eachers have . . . a vested right in the state teachers' retirement system," and the "right includes the proper use of the earnings . . . . [T]he legislature and the plaintiff board are not free to spend or appropriate the earnings of the fund except in a manner authorized by statute . . . .").

interest exists is often intertwined with the question of whether any property interest has been taken. *See, e.g., id.* at ¶¶ 189–92. Bilda's claim plainly founders on the second inquiry and perhaps on both. We recognize that Bilda and fellow members of the plaintiff class possess a property interest in the assets and income of the county retirement system, and that they have certain vested and contractual rights that are protectable under not only the United States and Wisconsin Constitutions, but under applicable precedents (see footnote 5), state legislative enactments and the County ordinance itself. We conclude, however, that the system participants do not have a right to dictate how, within the requirements and limitations imposed by law, the system is administered and funded on a day-to-day or year-to-year basis. The supreme court's analysis in *Lightbourn* supports this conclusion.

¶ 15. The supreme court concluded in *Lightbourn* that "participating employees [do not have] a property right to determine exactly how employers fulfill their benefit commitments." *Id.*, ¶ 179. Rather, the governing statute "gives them a property right in having their benefit commitments fulfilled . . . [but not] a legal right to veto legislative decisions about benefit funding without showing some tangible injury." *Id.* We agree with the County that the supreme court's analysis in *Lightbourn* is applicable here. Here, as in *Lightbourn*, a state legislative enactment permits changes to a retirement system for public employees, provided that no changes "diminish or impair" (or "abrogate") existing participants' rights or benefits in the system.[6] Here, as well,

---

[6] The governing statute in *Lightbourn*, WIS. STAT. § 40.19(1), permits the state to "amend or repeal" statutes governing the state retirement system, provided that "[r]ights

the change implemented in 1992, like the "employer credit" challenged in *Lightbourn*, has not been shown to "damage the property interests" of system participants. *See Lightbourn*, ¶ 192.

¶ 16. Bilda attempts to distinguish the holding in *Lightbourn* on the grounds that it deals with the state retirement system and not the County's system, overlooking the fact that he also relies, in part, on precedents involving state retirement systems (see footnote 5). He points to no evidence in the present record, however, from which a fact-finder could conclude that he or any member of the class has suffered any injury whatsoever from the County's election to change the method by which it reimburses the retirement system for operational and administrative expenses. Bilda also points to nothing in the record that places in dispute the system actuary's explanation that the 1992 change affects only the *timing* of the County's payments to the system to cover administrative expenses, not its *obligation* to make payments sufficient to cover those expenses. By the same token, he does not dispute either the averment of the retirement system's fiscal officer that, since 1992, the system "has always paid all of its

exercised and benefits accrued to an employee under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act." *See Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn*, 2001 WI 59, ¶¶ 108–10, 243 Wis. 2d 512, 627 N.W.2d 807. Similarly, the "home rule" legislation, 1965 Wis. Laws, ch. 405, empowers the County, "by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no such change shall operate to diminish or impair the annuities, benefits, or other rights of any person who is a member of such retirement system prior to the effective date of any such change." 1965 Wis. Laws, ch. 405, § 2.

pension obligations," or any of the following averments of the retirement system actuary:

The [retirement system] is a defined benefit plan . . . . The Plan does not create or maintain individual accounts for its participants . . . . The County, as the employer sponsoring a defined benefit plan, is obligated to pay whatever is necessary to assure all benefits are paid in full as they become due.

The [present] system of contribution payments poses no threat whatsoever to the timely payment of benefits to participants and beneficiaries, now or in the foreseeable future. To my knowledge, the [retirement system] has never failed to make full and timely benefit payments to all eligible participants and beneficiaries.

[O]ver time Milwaukee County indirectly pays all of the investment and administrative expenses of the [retirement system] in a manner similar to the way in which a borrower pays the closing costs of his or her mortgage over time when those costs are folded into the amount of the loan instead of being paid directly at the time of closing.

¶ 17. We thus reject Bilda's taking claim grounded on the 1992 amendment. Bilda also alleged in his complaint, and seems to argue on appeal, that the payment of investment management expenses, both before and after 1992, by the Employes' Retirement System fund was also illegal and unconstitutional. The income the fund receives on its investments is generally net of fees charged by investment managers, and, thus, Bilda contends the fund is "paying" these expenses because the income it receives is less than if the County directly paid the investment management fees. The system's actuary averred in this regard that, "while [the retirement system] initially pays its investment expenses (the fees paid to investment bankers and money

227

managers for investing and managing its assets), the net investment income is one of the factors which determine the amount of Milwaukee County's annual contribution to the [system] . . . . If Milwaukee County paid the investment expenses directly, the amount of its annual contribution would decrease . . . ." Thus, our conclusion that the method by which the retirement system's administrative and operational costs have been paid since 1992 is neither illegal nor unconstitutional governs the investment expense issue as well.

¶ 18. In sum, we reject Bilda's contention that the County must continue to be bound by the requirement in 1937 Wis. Laws, ch. 201, that it annually pay into the retirement system's "Expense Fund" a sufficient "amount of money which shall be deemed necessary to be paid into the expense fund during the ensuing year to provide for the expense of operation of the retirement system." *Id.*, § 8(5). Rather, the legislature has empowered the County "to make any changes in [the retirement system] which . . . may be deemed necessary or desirable for the continued operation of [the system]," provided participants' rights and benefits are neither "diminished" nor "impaired" by the change. 1965 Wis. Laws, ch. 405, § 2. The County changed the way in which it pays for the expenses of administering its retirement system in 1992, but nothing in the record establishes or places in dispute that the change operated "to diminish or impair the annuities, benefits, or other rights of any person who is a member" of the retirement system. *See id.* Whether it may be said that Bilda possesses no property interest in the method by which the County pays for the costs of administering its retirement system, or whether it is more proper to say that the 1992 change did not result in a taking of Bilda's

vested property interests, the result is the same: there is no violation of Article I, § 13 of the Wisconsin Constitution.

¶ 19. We conclude the trial court did not err in granting the County summary judgment and dismissing Bilda's complaint.

## CONCLUSION

¶ 20. For the reasons discussed above, we affirm the appealed judgment. We also deny all post-briefing motions.[7]

---

[7] Although we have treated them collectively as "the County," both Milwaukee County and the Milwaukee County Employes' Retirement System Pension Board were named as separate defendants and they filed separate response briefs in this appeal. Each respondent also moved to strike portions of Bilda's reply brief on the grounds that Bilda first raised arguments in the reply brief that were either not made in the circuit court or in Bilda's opening brief, or both. Alternatively, the respondents requested leave to file sur-reply briefs, which they simultaneously tendered to the court, and they both asked that we impose sanctions requiring Bilda to pay the additional legal fees they incurred in responding to Bilda's allegedly improper arguments in the reply brief. Bilda responded, asking us to deny both motions and to sanction the respondents for making false statements and filing motions for an improper purpose that were not well-grounded in fact. We deny all of these motions and requests for sanctions. To the extent Bilda raised new issues in his reply brief, we have no need for sur-reply briefs to reject them. It is a well-established rule that we do not consider arguments raised for the first time in a reply brief. *See Northwest Wholesale Lumber, Inc. v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995). The County and the board could have moved to strike portions of Bilda's reply brief, indicating that if we were inclined to address Bilda's new arguments, we should grant the opportunity for a sur-reply,

*By the Court.*—Judgment affirmed.

thus avoiding the effort and expense of actually preparing and tendering sur-reply briefs. We are content to leave where they lie the costs all three parties incurred in generating the largely unnecessary and unhelpful post-briefing submissions.