SHIRLEY S. ABRAHAMSON, J. (dissenting).
¶ 54 The statute delegating authority to first class cities to administer their own retirement systems explicitly states that the statute's purpose is to allow all first class cities "the largest measure of self-government with respect to pension annuity and retirement systems[.]" § 31, ch. 441, Laws of 1947. How can this statutory statement of purpose be squared with the majority's interpretation of the 1947 Law? It can't.
¶ 55 The idea espoused by the majority that the legislature intended to afford cities "the largest measure of self-government with respect to pension annuity and retirement systems" but did not intend to allow cities to change the composition of their municipal pension boards (essentially the governing bodies of their municipal retirement systems) borders on the absurd.
¶ 56 In contrast to the majority, I would affirm the court of appeals. I conclude that the size, composition, or manner of election of the Pension Board set forth in the 1947 Law and section 36-14 of the City Charter may be amended, altered, or modified. Members of the Retirement System have the right to have their benefit commitments fulfilled, but they do not have a right to determine exactly how those benefit commitments are fulfilled. Thus, I conclude that the 2013 Milwaukee Charter Amendment did not violate the 1947 Law or Section 36-14 of the City Charter by modifying the "annuities, benefits or other rights" of any persons who were members of the Retirement System prior to the effective date of the Amendment.
¶ 57 Rather than provide a detailed critique of the majority opinion, I set forth below the opinion I think should have been written by the court.
* * * *
¶ 58 This is a review of an unpublished per curiam decision of the court of appeals affirming a judgment of the Circuit Court for Milwaukee County, Timothy G. Dugan, Judge.[1] The circuit court granted the motion of the City of Milwaukee, the defendant, for summary judgment and denied the cross-motion for summary judgment[2] of one of the plaintiffs, the Milwaukee Police Association.[3] The circuit court entered judgment in favor of the City dismissing the Unions' complaints. The Unions appealed.
¶ 59 On the Unions' appeal, the court of appeals affirmed the circuit court judgment *611 in favor of the City. The court of appeals concluded that the City did not violate the rights of members of the City of Milwaukee Employes' Retirement System when it amended section 36-15-2 of the City Charter to change the size, composition, and manner of election of the Annuity and Pension Board ("the Pension Board") of the Retirement System.[4]
¶ 60 The instant case presents a single issue: whether the City's enactment of Common Council File No. 131162 ("the 2013 Milwaukee Charter Amendment") amending section 36-15-2 of the City Charter to alter the size, composition, and manner of election of the Pension Board amends, alters, or modifies the "annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration."[5]
¶ 61 The size, composition and manner of election of the Pension Board were first detailed by the state legislature in 1937. See § 7, ch. 397, Laws of 1937. In 1947, the state legislature granted all first class cities, including the City of Milwaukee, the authority to amend the 1937 Law as applied to their retirement systems, except that "no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration." See § 31, ch. 441, Laws of 1947 (emphasis added).
¶ 62 I conclude that the 2013 Milwaukee Charter Amendment altering the size, *612 composition, and manner of election of the Pension Board is valid. Neither the size, composition, nor manner of election of the Pension Board is an annuity, benefit, or other right of the members of the Retirement System. Thus, the 2013 Milwaukee Charter Amendment does not modify "annuities, benefits or other rights" of any persons who are members of the Retirement System prior to the effective date of the amendment, alteration, or modification.
¶ 63 Accordingly, I would affirm the decision of the court of appeals.
I
¶ 64 The facts are brief and undisputed. In 2013, the City of Milwaukee amended section 36-15-2 of the Milwaukee City Charter. This 2013 Milwaukee Charter Amendment provision sets forth the membership of the Pension Board; it changed the size and composition of the Pension Board and the manner in which Pension Board members were elected.
¶ 65 Prior to 2013, the Pension Board, which had been changed from its original size and composition by a 1972 amendment to the City Charter, was made up of eight members: three actively employed city employees elected to the Pension Board by actively employed city employees; one retiree elected by retirees; three appointed by the President of the Common Council; and the City's elected Comptroller, ex officio.
¶ 66 The 2013 Milwaukee Charter Amendment added three mayoral appointments to the Pension Board for a total of eleven members. The 2013 Milwaukee Charter Amendment also dictated that of the three actively employed city employees on the Pension Board, one must be an active employee of the police department, one must be an active employee of the fire department, and the remaining member must be an active employee of a non-public safety department. Only active police officers may vote to elect the required Pension Board member from the police department. Only active fire fighters may vote to elect the required Pension Board member from the fire department. Finally, only active general (i.e., non-public safety) city employees may vote to elect the required Pension Board member from a non-public safety department.
¶ 67 The Milwaukee Police Association commenced the instant lawsuit, seeking a declaratory judgment that the 2013 Milwaukee Charter Amendment violated the Retirement System members' vested rights in the size and composition of the Pension Board and the Retirement System members' vested right to elect members to the Pension Board without being limited to voting only for members in their same employment classification.[6] Local 215 of the Milwaukee Professional Fire Fighters Association was allowed to intervene, and its position is essentially the same as that of the Milwaukee Police Association.
¶ 68 The circuit court granted summary judgment in favor of the City and denied the Milwaukee Police Association's cross-motion for summary judgment. The circuit court concluded that the members of the Retirement System did not have "a specific right to the makeup of the [Pension Board]" and that the 2013 Milwaukee Charter Amendment modifying "the makeup of the [Pension Board] does not affect any of the rights of the members...." The circuit court entered judgment in favor of the City. The Unions appealed to the court of appeals.
*613 ¶ 69 The court of appeals affirmed the judgment of the circuit court. It "conclude[d] that the City is entitled to amend, on a prospective basis, matters related to the size, composition, and manner of election of the pension board[ ] because the members of the retirement system do not have any rights in those matters."[7]
¶ 70 The court granted the Unions' petition to review the decision of the court of appeals. For the reasons set forth, I would affirm the decision of the court of appeals.
II
¶ 71 The court is asked to determine the meaning and validity of the 2013 Milwaukee Charter Amendment. These are questions of law that this court decides independently of the circuit court and court of appeals, benefiting from the analyses of the latter two courts. Megal Dev. Corp. v. Shadof, 2005 WI 151, ¶ 8, 286 Wis. 2d 105, 705 N.W.2d 645.
III
¶ 72 To respond to the questions of law presented, I begin by examining the relevant 1937 and 1947 Laws the legislature enacted and the City's history of amending its Charter regarding the composition and election of members of the Pension Board.
¶ 73 In 1937, the legislature created the Pension Board and granted it administrative authority over the operation of the Retirement System.[8] The 1937 Law detailed the membership of the Pension Board as follows:
(2) MEMBERSHIP. The membership of the board shall consist of the following:
(a) Three members to be appointed by the chairman of the common council or other governing body (subject to the confirmation by such common council or other governing body), for a term of three years,
(b) The city comptroller ex-officio,
(c) Three employe members who shall be members of the retirement system and who shall be elected by the members of the retirement system for a term of three years according to such rules and regulations as the board shall adopt to govern such election. The initial terms of the first three members so elected shall expire at the end of one, two and three years, respectively. Following the completion of the initial terms, the terms of the office of such members shall be three years.
§ 7(2), ch. 396, Laws of 1937.
¶ 74 To allow cities "the largest measure of self-government with respect to pension annuity and retirement systems," in 1947, the legislature empowered "cities of the first class," including the City of Milwaukee, as follows:
to amend or alter the provisions of [the 1937 Law] in the manner prescribed by section 66.01 of the statutes ; provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the *614 effective date of such amendment or alteration.[9]
¶ 75 The 1947 Law explicitly granted employees "a vested right" to the "annuities and other benefits" offered by the Retirement System and declared that these rights "shall not be diminished or impaired by subsequent legislation or by any other means without [members'] consent." See § 30(2)(a), ch. 441, Laws of 1947.
¶ 76 The City codified the pertinent part of the 1947 Law in section 36-14 of its Charter as follows:
36-14. Home Rule. For the purposes of giving to cities of the first class the largest measure of self-government with respect to pension, annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government and shall not be construed as an enactment of statewide concern. Cities of the first class are hereby empowered to amend or alter the provisions of this act in the manner prescribed by s. 66.0101, Wis. Stats., provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration.
Milwaukee Charter § 36-14 (emphasis added).
¶ 77 Since the enactment of the 1947 Law and the codification of pertinent parts in section 36-14 of the City Charter, the City has amended the size, composition, and manner *615 of election of the members of the Pension Board. For example, in 1967, the City Charter was amended to delete obsolete provisions and to revise language pertaining to elected active-employee members of the Pension Board who reach compulsory retirement age during their respective terms. In 1972, a new position on the Pension Board was created to be filled by a retired city employee elected by other retired city employees. In 1980, the term of Pension Board members was extended from three to four years except for the City Comptroller, whose term remained ex officio. In 1996, the term of the three Pension Board members appointed by the President of the Common Council was reduced from four to two years.
¶ 78 The instant case centers around the 2013 Milwaukee Charter Amendment altering the size, composition, and manner of election of the members of the Pension Board. The 2013 Milwaukee Charter Amendment added three mayoral appointments to the Pension Board for a total of eleven members. It also directed that of the three actively employed city employees on the Pension Board, one must be an active employee of the police department, one must be an active employee of the fire department, and the remaining member must be an active employee of a non-public safety department. Only active police officers may vote to elect the required Pension Board member from the police department. Only active fire fighters may vote to elect the required Pension Board member from the fire department. Finally, only active general (i.e., non-public safety) city employees may vote to elect the required Pension Board member from a non-public safety department.
IV
¶ 79 This court must determine whether the 2013 Milwaukee Charter Amendment altering the size, composition, and manner of election of the members of the Pension Board violates the 1947 Law and section 36-14 of the City Charter.
¶ 80 I begin with the texts of the 1947 Law and section 36-14 of the City Charter. The 1947 Law and section 36-14 of the City Charter discussed above contain identical language. They both acknowledge a grant of authority to first class cities to amend, alter, or modify the City Charter, with one exception: "[N]o such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration."[10]
¶ 81 Everyone seems to agree that voting for election of members of the Pension Board does not fall within "annuities or benefits" under the 1947 Law. The questions presented are whether voting for election of members of the Pension Board and retaining a Pension Board of a particular size and composition fall within the phrase "other rights" in the 1947 Law.
¶ 82 The Unions argue that one of their "other rights" protected from amendment or alteration under the 1947 Law and section 36-14 of the City Charter is the right to a Pension Board that is of a particular size and composition and whose members are voted for in a particular manner.
¶ 83 Resolving the meaning of the legislative phrase "other rights" may be aided by applying the ejusdem generis canon of statutory interpretation. This canon of interpretation "uses context to elicit meaning from statutory language" and provides that "when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed." Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶ 44, 319 Wis. 2d 439, 768 N.W.2d 700 (quoting State v. Quintana, 2008 WI 33, ¶ 27, 308 Wis. 2d 615, 748 N.W.2d 447 ).
¶ 84 The specific words "annuities" and "benefits" may thus guide the meaning of the phrase "other rights." Adhering to the canon of ejusdem generis and construing general words in light of the specific words in the same list, I conclude that the general words "other rights" in the 1947 Law and section 36-14 of the City Charter refer, as do the words "annuities" and "benefits," to members' financial or monetary advantages or services rendered to members. Accordingly, under the language of the 1947 Law and section 36-14 of the City Charter, first class cities are authorized to amend the 1937 Law, but no such amendments may alter any members' annuities, benefits, or members' rights to financial or monetary advantages or services to which they have become entitled prior to the effective date of the amendment.
¶ 85 The Unions' claimed right to a Pension Board of a particular size, composition, and manner of election is inconsistent with my interpretation of "other rights" under the 1947 Law and section 36-14 of the City Charter.[11] The Unions' claimed right is unlike an annuity or a retirement benefit, which contemplate the payment of *616 money or delivery of a service to a beneficiary.
¶ 86 My conclusion that the Unions do not have a right to a Pension Board of a particular size, composition, and manner of election is supported by the case law.
¶ 87 In Wisconsin Professional Police Ass'n, Inc. v. Lightbourn, 2001 WI 59, 243 Wis. 2d 512, 627 N.W.2d 807, the plaintiffs challenged the constitutionality of a statute making numerous changes to the Wisconsin state retirement system. The statute's changes were "relat[ed] to: benefit improvements, interest crediting, variable annuity option, contribution credits for employers, death benefits, credit for legislative service, recognition of income and capital gains and losses in the fixed retirement investment trust and affecting certain actuarial assumption and liabilities under the Wisconsin retirement system." Lightbourn, 243 Wis. 2d 512, ¶ 39, 627 N.W.2d 807. The court rejected the plaintiffs' argument in Lightbourn that these changes amounted to an unconstitutional taking, explaining that participants in the Wisconsin retirement system have a right to have their benefit commitments fulfilled, but they do not have a "right to determine exactly how employers fulfill their benefit commitments." Lightbourn, 243 Wis. 2d 512, ¶ 179, 627 N.W.2d 807.
¶ 88 In Bilda v. Milwaukee County, 2006 WI App 57, 292 Wis. 2d 212, 713 N.W.2d 661, the plaintiffs brought a class action lawsuit against Milwaukee County alleging that changes to the Milwaukee County Ordinances governing the county's retirement system constituted an unconstitutional taking. The challenged ordinance changed the way in which administrative expenses are paid.
¶ 89 Discussing and applying Lightbourn, the Bilda court of appeals rejected the plaintiffs' challenge, concluding that "the system participants do not have a right to dictate how, within the requirements and limitations imposed by law, the system is administered and funded on a day-to-day or year-to-year basis." Bilda, 292 Wis. 2d 212, ¶ 14, 713 N.W.2d 661.
¶ 90 The Unions' claimed right to the size, composition, and manner of election of the members of the Pension Board is akin to asserting the rights the Bilda court rejected, namely the rights to dictate how employers fulfill their benefit commitments and how the system is administered on a day-to-day basis.
¶ 91 Moreover, the Unions' analyses of statutory and constitutional home rule are misguided. Under a statutory home rule analysis, a four-factor test is used to determine whether a statute preempts a local ordinance. "A municipal ordinance is preempted if (1) the legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation; or (4) it violates the spirit of state legislation." DeRosso Landfill Co. Inc. v. City of Oak Creek, 200 Wis. 2d 642, 651-52, 547 N.W.2d 770 (1996) (footnotes omitted). The instant case does not involve these situations.
¶ 92 First, the legislature has not expressly withdrawn the power of municipalities to act regarding the 1937 Law. Instead, the 1947 Law granted first class cities like the City of Milwaukee the power to amend the 1937 Law as it applies to the retirement system except that "no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration." As I explained above, the 2013 Milwaukee Charter Amendment does not modify "the annuities, benefits or other rights" of any persons who were members of the Retirement System prior *617 to the effective date of the amendment or alteration.
¶ 93 Second, the 2013 Milwaukee Charter Amendment does not logically conflict with the 1947 Law.[12] The 2013 Milwaukee Charter Amendment does not contradict the directive in the 1947 Law that a municipality may not alter, amend, or modify the annuities, benefits, or other rights of any persons who are members of the system prior to the effective date of the amendment.
¶ 94 Third, the 2013 Milwaukee Charter Amendment does not defeat the purpose of the 1947 Law. An ordinance may be invalid if it frustrates the purpose of a legislative enactment.[13]
¶ 95 The purpose of the 1947 Law was to allow cities "the largest measure of self-government with respect to pension annuity and retirement systems" while protecting against an amendment or alteration that modifies the annuities, benefits, or other rights of persons who were members of the retirement system prior to the effective date of an amendment.[14] The 2013 Milwaukee Charter Amendment is a lawful exercise of the authority granted to first class cities under the 1947 Law, fulfills the purpose of the 1947 Law, and does not make any prohibited amendment, alteration, or modification to members' annuities, benefits, or other rights.
¶ 96 Fourth and finally, nothing in the 2013 Milwaukee Charter Amendment supports the Unions' argument that changes to the size, composition, and manner of election of the Pension Board violate the spirit of the 1947 Law.[15] Rather, the 2013 Milwaukee Charter Amendment comports with the spirit of the 1947 Law: The 1947 Law allows cities the largest extent of self-government possible while protecting against amendment, alteration, or modification of members' annuities, benefits, or other rights.
¶ 97 The Unions' constitutional home rule argument fares no better. The Home *618 Rule Amendment to the Wisconsin Constitution reads: "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature." Wis. Const. art. XI, § 3 (1).
¶ 98 The Unions argue that although the legislature declared that any future modifications to the Retirement System would be a matter of local concern, it specifically excepted from that grant of authority the ability to modify rights that had already accrued. However, as I explained above, members of the Retirement System do not have a right in a Pension Board of a particular size, composition, or manner of election.
¶ 99 Before concluding, I pause to acknowledge the implications of the Unions' asserted right in the instant case. Recognizing the Unions' claimed right to proportional representation on the Pension Board or to a Pension Board of a particular size, composition, and manner of election would limit to a breathtaking extent the City's authority to amend the 1937 Law. If members are vested with the right to a Pension Board of a particular size, composition, and manner of election based upon the date at which the member joined the Retirement System, must the City create new pension boards that administer the Retirement System for different classes of members? If the 2013 Milwaukee Charter Amendment is invalid, is the 1972 amendment, which added the retiree position on the Pension Board, invalid for the same reasons? On what possible basis would adding a seat in 1972 be valid, but adding three seats in 2013 be invalid? Multiple boards of various sizes and compositions administering the Retirement System to numerous classes of Retirement System members would be an unworkable system.
V
¶ 100 The size, composition, or manner of election of the Pension Board set forth in the 1947 Law and section 36-14 of the City Charter may be amended, altered, or modified. Members of the Retirement System have the right to have their benefit commitments fulfilled, but they do not have a right to determine exactly how those benefit commitments are fulfilled. Thus, I conclude that the 2013 Milwaukee Charter Amendment did not violate the 1947 Law or section 36-14 of the City Charter. The 2013 Milwaukee Charter Amendment did not "modify the annuities, benefits or other rights" of any persons who were members of the Retirement System prior to the effective date of the 2013 Milwaukee Charter Amendment.
* * * *
¶ 101 For the reasons set forth, I dissent.
¶ 102 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

The employees also gained an ally when, in 1972, the City added a representative of retired employees to the Board. Nothing in the 2013 amendment affected that position. See Milw., Wis., Charter Ord. § 36-15-2(d).

Even as legislative analysis, the court errs. It says:
Employees have the most to gain from a financially stable ERS because the ERS directly impacts their financial security upon retirement. In addition, it is employees who will suffer most if ERS funds are lent to a cause that returns a worthless promissory note in exchange for the funds that the Board manages, as has occurred in other states.
Majority op., ¶ 32 (footnote omitted).
But this just isn't so. The ERS's financial stability has no effect on the employees' financial security at all. Liability for retirement benefits belongs to the City, and the City must pay them regardless of whether the ERS has any funds to manage:
[T]he payment of all pensions, annuities, retirement allowances, refunds, and other benefits granted under the provisions of this act and all expenses in connection with the administration and operation of the retirement system are hereby made obligations of the city and city agencies.
§ 27, ch. 441, Laws of 1947. And these obligations are due to the employees as vested contractual rights that cannot be reduced without their consent:
The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such law is amended and in effect on the effective date of this act shall be obligations of such benefit contract on the part of the city and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.
§ 30(2)(a), ch. 441, Laws of 1947.
Actually, the people with the most interest in the ERS's financial stability are not the employees, but the taxpayers of the City of Milwaukee, who are ultimately liable for the ERS's financial obligations through the imposition of additional taxes:
In order to meet the requirements of this act, the common council or other governing body or city agency is authorized to levy a tax annually, which tax shall be in addition to all other taxes such common council or other governing body or city agency has been authorized to levy upon all taxable property, real and personal.
§ 23(b), ch. 441, Laws of 1947.

The plaintiffs are the Milwaukee Police Association and its president, Michael Crivello (together referred to as "the Milwaukee Police Association"), and the Milwaukee Professional Fire Fighters Association, Local 215 and its president, David R. Seager, Jr. (together referred to as "Local 215"). All four plaintiffs will collectively be referred to as "the Unions."

This opinion sometimes uses the word "employe" rather than "employee." The court of appeals in Richland School District v. Department of Industry, Labor & Human Relations, Equal Rights Division, 166 Wis. 2d 262, 271 n.1, 479 N.W.2d 579 (Ct. App. 1991), explained why "employe" is sometimes used in opinions instead of the significantly more common "employee" as follows:
In a letter to the author, Professor Walter B. Raushenbush of the University of Wisconsin Law School explains why chapters 101 through 108, Stats., refer to "employe" when many well-meaning lawyers and judges refer to "employee":
My father, Paul A. Raushenbush, drafted most of the original legislation [for ch. 108] in 1930-31, and most of the amendments through the mid-1960's. He was director of Wisconsin's Unemployment Compensation Department (under the then Industrial Commission) from roughly 1934 to 1967. I well remember being aware that he strongly favored the spelling with "e"-"employe." And I recall asking him why, when "employee" was surely the more common spelling. His answer was that the statutes must avoid confusion between worker and employer. Since "e" and "r" are right next to each other on the typewriter keyboard, there's a real risk that "employer" might be typed "employee," and vice-versa. The confusion which this might cause could best be avoided, he said, by using "employe."

The Milwaukee Police Association sets forth four issues in its petition for review:
1. Whether a Municipality May Lawfully Disregard Specific Requirements the Legislature Has Placed on the Municipality, by Simply Passing an Ordinance at Odds with the Law?
2. Whether Home Rule Allows the City to Avoid the Mandates Identified by the Legislature in the Session Laws of 1937 and 1947?
3. Whether the Session Laws of 1937 and 1947 Vested ERS Members with the Right to Vote for and Seat ERS Board Members?
4. Whether the Decision below Is in Conflict with the Decisions of this Court in Van Gilder v. City of Madison and Johnston v. City of Sheboygan?
The Milwaukee Professional Fire Fighters Association, Local 215, sets forth a single issue in its petition for review:
1. Whether a Municipality May Ignore the Legislature's Specific Mandates Regarding the Size and Composition of the Pension Board Simply by Passing its Own Ordinance?
The single issue I present in effect addresses the issues set forth in both petitions for review and is dispositive.

The Unions sometimes refer to their purported right as the right to proportional representation on the Pension Board.

Milwaukee Police Ass'n v. City of Milwaukee, No. 2015AP2375, unpublished slip op., ¶ 42, 2017 WL 1096500 (Wis. Ct. App. Mar. 23, 2017).

§ 7, ch. 396, Laws of 1937. Section 7(1) states: "The general administration and responsibility for the proper operation of the retirement system and for making effective the provisions of this act are hereby vested in an annuity and pension board which shall be organized immediately after the first four members provided for in this section have qualified and taken the oath of office." § 7(1), ch. 396, Laws of 1937.

§ 31, ch. 441, Laws of 1947 (emphasis added).

§ 31, ch. 441, Laws of 1947; Milwaukee City Charter § 36-14 (emphasis added).

The Unions also argue that their right in the size, composition, and manner of election of the Pension Board is established in their collective bargaining agreements. The collective bargaining agreements state: "The City agrees not to diminish any contractual pension and annuity rights presently vested in any employee including any rights enumerated herein." I reject the Unions' interpretation of their collective bargaining agreements for the same reason I reject their interpretations of the 1947 Law and section 36-14 of the City Charter. The reference to "pension and annuity rights" does not refer to a right to determine how those benefit obligations are fulfilled.

See Wisconsin's Envt'l Decade, Inc. v. DNR, 85 Wis. 2d 518, 534-35, 271 N.W.2d 69 (1978) (a city ordinance preventing chemical treatment in Madison lakes logically conflicted with the DNR's statutory power to "supervise chemical treatment of waters").

In Wisconsin's Environmental Decade, Inc. v. Department of Natural Resources, 85 Wis. 2d 518, 535-36, 271 N.W.2d 69 (1978), for example, the court stated that even assuming that the ordinance and statute at issue are not "logically conflicting," the ordinance was nevertheless invalid because it frustrated the state program of water resource management and of vesting authority over the state's navigable waters in the Department of Natural Resources.

See § 31(1), ch. 441, Laws of 1947 (emphasis added):
For the purpose of giving to cities of the first class the largest measure of self-government with respect to pension annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government and shall not be construed as an enactment of statewide concern. Cities of the first class are hereby empowered to amend or alter the provisions of this act in the manner prescribed by section 66.01 of the statutes ; provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration.

In Anchor Savings & Loan Ass'n v. Equal Opportunities Commission, 120 Wis. 2d 391, 397-99, 402, 355 N.W.2d 234 (1984), the court concluded that the legislature had "adopted a complex and comprehensive statutory structure" regulating credit and lending, as well as a "complete, all-encompassing plan" regulating savings and loan associations, rendering the Madison ordinance at issue void as "contrary to the spirit" of the legislation.