**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 21, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.**   **2019AP1258-FT**

Cir. Ct. No. **1994ME489**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF J. M. A.:

LA CROSSE COUNTY,

    PETITIONER-RESPONDENT,

  V.

J. M. A.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for La Crosse County: ELLIOTT M. LEVINE, Judge. *Affirmed*.

¶1 NASHOLD, J.[1] J.M.A. appeals an order extending his involuntary commitment. He argues that La Crosse County failed to adduce clear and convincing evidence that he was dangerous, as required by WIS. STAT. § 51.20. The circuit court's order is affirmed.

## BACKGROUND

¶2 On October 31, 2018, the County filed a petition to extend J.M.A.'s involuntary commitment. J.M.A. contested the petition, and the circuit court held an evidentiary hearing.

¶3 Dr. Gail Tasch, the psychiatrist who was appointed to perform an evaluation of J.M.A., testified at the hearing. Her testimony and report were the only evidence introduced at the hearing. Because J.M.A. refused to meet with Dr. Tasch, her opinion was based on a review of J.M.A.'s medical records and on discussions with some of his health-care providers, including J.M.A.'s previous psychiatrist.

¶4 In her report and testimony, Dr. Tasch stated that J.M.A. had paranoid schizophrenia, a history of psychosis, fixed delusions, aggression, and noncompliance with treatment. She also testified that, approximately six months prior to the hearing, J.M.A. had threatened to kill his previous psychiatrist, Dr. Katie Fassbinder, and lock his own relatives in a house. Dr. Fassbinder stopped treating J.M.A. because of the threats. J.M.A.'s conduct resulted in his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d). In an August 30, 2019 order, the court placed this case on the expedited appeals calendar, and the parties have submitted memo briefs. *See* WIS. STAT. RULE 809.17. Briefing was complete on October 25, 2019. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

admission to Winnebago Mental Health Institute. At the time of the hearing, however, J.M.A. was living in a group home and was receiving a small amount of psychotropic medication. Dr. Tasch's medical opinion was that J.M.A.'s current placement and treatment were appropriate and beneficial.

¶5 Dr. Tasch further testified that, while J.M.A.'s health was improving with treatment, there was a substantial likelihood that J.M.A. would become dangerous and a proper subject for commitment if treatment were withdrawn:

> Q Doctor, if treatment were withdrawn at this time, is there a substantial likelihood that [J.M.A.] would present a danger to himself or others, and once again become a proper subject for commitment?
>
> A If treatment were withdrawn, it's likely that he could quickly deteriorate. He requires still the structure and support of a group home.
>
> Q And you feel if treatment were withdrawn, then he would then pose a danger to himself or to others?
>
> A Correct. He still voices fixed delusions about the government and such, and there's still some psychosis, some psychotic thoughts are still present.
>
> Q Doctor, are all the opinions that you've given today to a reasonable degree of medical certainty?
>
> A Yes.

Similarly, Dr. Tasch's report states:

> If treatment were withdrawn, it is likely that [J.M.A.] would quickly deteriorate. He continues to require much structure and support. He would benefit from his continued treatment plan of minimal doses of medication and group home supervision....
>
> If treatment were withdrawn, it is likely that [J.M.A.] would not comply with treatment, and possibly end up in medication withdrawal. He could develop aggressive behavior again with or without medication. He continues

to require the structure and support of a mental health commitment.

¶6    Following the hearing, the court issued an order extending J.M.A.'s commitment for twelve months.  This appeal follows.

## DISCUSSION

### *I. Standing*

¶7    In its response to J.M.A.'s appeal, the County argues that J.M.A. waived his right to appeal and that he therefore lacks "standing" to pursue it.  For the reasons that follow, the County is incorrect.

¶8    At the start of the commitment extension hearing, J.M.A.'s attorney told the circuit court that J.M.A. was "willing to stipulate to an extension of the commitment for six months," but indicated that it was counsel's understanding that the County was not willing to do that.  The hearing therefore went forward on the merits.

¶9    The County argues that, when J.M.A. said he was "willing" to stipulate to a six-month extension, J.M.A. waived his right to appeal because "[a] party to a civil case waives the right to appeal if he or she consents or stipulates to the entry of a judgment."  ***Auer Park Corp. v. Derynda***, 230 Wis. 2d 317, 322, 601 N.W.2d 841 (Ct. App. 1999).  We first note that this appears to be an issue of waiver rather than one of standing.  Regardless, the County's argument fails because the record does not reflect that a stipulation occurred.

¶10    While it is true that J.M.A. proffered a stipulation, it is also true that the County never accepted the proffer.  The County cites no authority and makes no argument for the proposition that a rejected proffered stipulation has the legal

force of an accepted stipulation. Without an accepted stipulation, the rest of the County's argument falls; J.M.A. may pursue this appeal.

## II. Commitment Extension

¶11 Review of a commitment order presents a mixed question of law and fact. *See* ***Waukesha Cty. v. J.W.J.***, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. This court upholds the circuit court's findings of fact unless those findings are clearly erroneous, but reviews the application of those facts to the statutory standards de novo. ***Id.***

¶12 To extend an involuntary civil commitment, the petitioner must show that the subject of the commitment is: (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous. ***Portage Cty. v. J.W.K.***, 2019 WI 54, ¶18, 386 Wis. 2d 672, 927 N.W.2d 509. The petitioner bears the burden of proving each of these elements by clear and convincing evidence. *See* ***id.***; *see also* WIS. STAT. § 51.20(13)(e). For purposes of this appeal, J.M.A. does not dispute that he is mentally ill and is a proper subject for treatment. Instead, he contends that the County did not produce clear and convincing evidence that he is dangerous within the meaning of the statute.

¶13 Under Wisconsin's involuntary commitment statute, a petitioner may prove that an individual is dangerous if the individual meets one of five different standards. *See* WIS. STAT. § 51.20(1)(a)2.a.-e.; *see also* ***J.W.K.***, 386 Wis. 2d 672, ¶17. Each standard requires proof of "recent acts or omissions demonstrating that the individual is a danger to himself or to others." ***J.W.K.***, 386 Wis. 2d 672, ¶17. However, when the petitioner is seeking an extension of a preexisting commitment, the petitioner may satisfy the recent acts or omissions requirement "by a showing that there is a substantial likelihood, based on the

subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." WIS. STAT. § 51.20(1)(am); *see also J.W.K.*, 386 Wis. 2d 672, ¶19. The supreme court has interpreted this provision as an "alternative evidentiary path" to meet the dangerousness requirement that "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19.

¶14 At the evidentiary hearing, the circuit court made the following findings of fact: (a) J.M.A. was mentally ill; (b) J.M.A. was a proper subject for, and would benefit from, treatment; and (c) J.M.A. had recently been improving. The court did not discuss whether J.M.A. was dangerous. However, after the hearing, the circuit court issued a written order extending J.M.A.'s commitment using Wisconsin's standardized ME-911 "Order of Commitment/Extension of Commitment/Dismissal" form. The ME-911 form contains a section where the circuit court indicates whether the grounds for an extension of commitment have been met and, if so, what those grounds are. In this case, the court checked the box indicating that the grounds for an extension of commitment had been met. The grounds included a finding that J.M.A. was "dangerous because the subject evidences behavior within one or more of the standards under §§51.20(1) or (1m), Wis. Stats."

¶15 J.M.A. argues that Dr. Tasch's testimony and report did not constitute clear and convincing evidence that J.M.A. was dangerous. In support of this contention, he argues that, although Dr. Tasch unambiguously testified that withdrawing treatment would likely render J.M.A. dangerous, Dr. Tasch's opinion

was merely "conclusory" insofar as Dr. Tasch did not explain, in detail, exactly how and why J.M.A. would become dangerous. J.M.A. also asserts that a finding of dangerousness cannot be based on his prior threats to his former psychiatrist and family members because the threats were not sufficiently tied to his mental illness and the record shows that this behavior coincided with methamphetamine use.[2]

¶16 J.M.A.'s arguments are not persuasive. First, J.M.A. has not established that a "conclusory" expert opinion on an ultimate issue cannot rise to the level of clear and convincing evidence. However, even assuming that he is correct, Dr. Tasch's opinion in this case was not conclusory. Dr. Tasch reviewed J.M.A.'s medical records and spoke with members of his medical team. Following her review, she detailed J.M.A.'s symptoms, the ameliorating effect that treatment was having on J.M.A., and her opinion that withdrawing treatment would likely cause J.M.A. to "quickly deteriorate" and that he could "develop aggressive behavior again." In short, far from being merely "conclusory," Dr. Tasch's opinion was well supported. Moreover, to the extent the court's order extending J.M.A.'s commitment relied on evidence of J.M.A.'s threats to kill his former psychiatrist and confine family members, J.M.A. has failed to establish that consideration of this conduct was erroneous simply because J.M.A.'s use of methamphetamines may have contributed to these threats.

---

[2] In his reply brief, J.M.A. raises the additional argument that there was insufficient evidence that his threats placed anyone in "reasonable fear" of harm. *See* WIS. STAT. § 51.20(1)(a)2.b. (dangerousness can be shown by "evidence that others are placed in *reasonable fear* of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm" (emphasis added)). However, because J.M.A. first raises this issue in his reply brief, the court will not address it. *See **Bilda v. County of Milwaukee***, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661.

¶17    Based on the foregoing, J.M.A. has failed to establish that the circuit court erred in extending his commitment for twelve months.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.