COURT OF APPEALS
DECISION
DATED AND FILED

November 21, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    2022AP1173
                      2022AP1528

Cir. Ct. No.  2018CV3

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

NO. 2022AP1173

VILLAGE OF BAY CITY,

PLAINTIFF-RESPONDENT,

V.

DAVID C. MEIXNER,

DEFENDANT-APPELLANT,

ROBERT L. LOBERG AND JAMES TURVAVILLE,

DEFENDANTS.

---

NO. 2022AP1528

IN THE MATTER OF SANCTIONS AGAINST ATTORNEY WILLIAM J. MAVITY:

VILLAGE OF BAY CITY,

PLAINTIFF-RESPONDENT,

v.

**DAVID C. MEIXNER, ROBERT L. LOBERG AND JAMES TURVAVILLE,**

   **DEFENDANTS,**

**WILLIAM J. MAVITY,**

   **APPELLANT.**

---

APPEALS from a judgment and an order of the circuit court for Pierce County:  RIAN RADTKE, Judge.  *Affirmed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  At the most basic level, these consolidated appeals involve a real estate dispute between the Village of Bay City and David C. Meixner.  The Village argued that it was entitled to an ownership interest—based on various legal theories—in four areas of disputed land located on property owned by Meixner.  The circuit court resolved two of the land disputes on summary judgment, and a jury resolved the remaining disputes at trial.  All issues were resolved in the Village's favor.  Meixner now appeals from the court's judgment entered in favor of the Village.

¶2    Attorney William J. Mavity represented Meixner during this litigation.  At different times during the course of this case, the circuit court

awarded sanctions against either Meixner or Mavity pursuant to WIS. STAT. § 802.05 (2021-22).[1]  Mavity appeals the imposition of those sanctions.  Finally, the Village has also moved for sanctions against Meixner and/or Mavity, arguing that these appeals are frivolous.

¶3    For the reasons discussed below, we are not persuaded by any of Meixner's or Mavity's arguments on appeal.  Further, we conclude that these appeals are frivolous, and we therefore grant the Village's motion for sanctions.  Thus, we remand this matter to the circuit court to determine and award costs, fees, and attorney fees associated with these appeals.

## BACKGROUND

¶4    On January 4, 2018, the Village filed suit against Meixner seeking a declaration that it was entitled to an ownership interest in four areas of disputed land.[2]  Within the Village, there is a street that local residents refer to as "Market Street," and Meixner owns four lots at the southwest end of that street: Lots 28, 29, 30, and 31.  Meixner also owns an area known as Block 20.[3]  The disputed land is located on these lots.  The parties call the four disputed tracts: (1) Market Street; (2) the "Ballfield Parking Area"; (3) Loop Road; and (4) Fish Market Street.  The Village claims that these four areas are public land, while Meixner argues that they belong to him.

---

[1]  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  The Village later filed both an amended complaint and a second amended complaint.

[3]  In 1999, Meixner purchased Lot 31 from Frank and Dale Dosdall.  In 2003, Meixner purchased Block 20 from Ray Bach.  Then, in 2014, Meixner purchased Lots 28-30 from the Tyler Family Trust (hereinafter, Tyler).

¶5 In the circuit court, the Village asserted it owned Market Street on the basis of four legal theories: statutory dedication; common law dedication; that Market Street is a public road under WIS. STAT. § 82.31, or a public user by work easement (public user); and by a prescriptive easement. The Village asserted that it owned Loop Road and Fish Market Street under three legal theories: common law dedication, public user, and by a prescriptive easement. Finally, the Village asserted that it owned the Ballfield Parking Area via a prescriptive easement.

¶6 On January 22, 2018, Meixner filed an answer to the Village's suit, denying the Village's claims and asserting multiple counterclaims against the Village and third-party claims against the Village's attorney, Robert L. Loberg, and the former Village board president, James Turvaville.[4] On December 2, 2019, Meixner filed an amended answer as well as amended counterclaims. For purposes of these appeals, the relevant counterclaims included: a defamation claim against the Village for investigating whether Meixner violated its floodplain ordinance because the Village's "publicly posted false references to his 'alleged floodplain violation' reflected negatively on his character" (the floodplain claim)[5];

---

[4] On June 16, 2021, the circuit court dismissed Meixner's third-party claims—which Meixner had improperly designated as counterclaims—against Loberg and Turvaville. We affirmed that decision based on Meixner's failure to properly commence a third-party action against those parties, which resulted in a lack of personal jurisdiction over them. *Village of Bay City v. Meixner*, No. 2021AP1323, unpublished slip op. ¶¶1-2 (WI App July 19, 2022).

Subject to limited exceptions that are not applicable here, an unpublished opinion may not be cited as precedent or authority. *See* WIS. STAT. RULE 809.23(3)(a)-(b). We do not, however, cite our decision from Meixner's previous appeal as precedent or authority. Instead, we cite it to provide necessary background and context for the issues raised in this case.

[5] In an unrelated matter, the Village received information from a citizen that Meixner had violated an applicable floodplain ordinance in building his home on Lot 31. The Village board went into closed session in 2016 and 2017 to discuss this allegation, and it publicly posted the minutes and agenda with this information.

and a claim for the "Concealment and/or Destruction of Village Fire Department Records," relating to allegedly missing Village fire department meeting minutes (the fire department claim).

¶7    In response, on December 30, 2019, the Village served Meixner with an unfiled (as of that date) sanctions motion pursuant to WIS. STAT. § 802.05 (Sanctions Motion 1). Sanctions Motion 1 was based on the Village's assertion that the floodplain claim, the fire department claim, and Meixner's inclusion of criminal statutes—WIS. STAT. §§ 942.03, 943.01, 943.13, and 946.72—within his civil counterclaims were either frivolous claims and/or made with the intent to harass.

¶8    On May 22, 2020, the Village moved for summary judgment on all its claims and on Meixner's counterclaims. Meixner opposed the motion and filed his own motion for summary judgment. The circuit court held a hearing on the cross-motions for summary judgment and, by an oral ruling, granted the Village's motion in part and denied Meixner's motion, including dismissing all of Meixner's counterclaims. The court later entered a written order regarding the same. In particular, the court granted the Village summary judgment as to two of the disputed areas: Market Street and the Ballfield Parking Area. The court found that the Village "put forth sufficient evidence to prevail on its claim for the Ballfield Parking Area via prescriptive use." It further found in the Village's favor on its claim to Market Street on the theory of statutory dedication. Accordingly, the court did not reach the Village's claims related to public user or common law dedication related to Market Street. The court denied summary judgment to the Village on its claims to Loop Road and Fish Market Street.

5

¶9      The Village's claims to Loop Road and Fish Market Street were tried to a jury in March 2022. The jury returned all special verdicts—pertaining to the claims for common law dedication, public user, and prescriptive easement—in the Village's favor, thereby granting its claims to Loop Road and Fish Market Street.

¶10     On April 11, 2022, Meixner filed a "Notice of Motion and Motion for Judgment Notwithstanding the Verdict" as well as a "Notice of Motion and Motion for a New Trial." Meixner did not file briefs accompanying those documents. On May 9, 2022, however, forty-seven days after the verdict, Meixner filed another document titled "Motion for Judgment Notwithstanding the Verdict" (JNOV Motion 2), which was filed under the designation as a brief in support of the first motion.

¶11     On May 20, 2022, the Village served Meixner with a second unfiled sanctions motion (Sanctions Motion 2), pertaining to JNOV Motion 2 and identifying seven instances of sanctionable conduct within that filing. That conduct related almost entirely to Meixner's claims within JNOV Motion 2 that the Village was misleading or committing fraud on the circuit court. Four days later, Mavity filed a letter with the court stating that he would not be withdrawing Meixner's JNOV Motion 2.

¶12     The circuit court discussed JNOV Motion 2 at two hearings. The first was at a status conference on May 11, 2022, where the court stated:

> The [c]ourt is left to follow the statute, [WIS. STAT. § ] 805.16(1) sets a time frame of 20 days, and so the [c]ourt will consider and review motions and briefs that were filed within the 20 days from verdict. I'm not going to review and look at any motions or briefs that are filed outside of that time frame as the statute sets a strict time frame. There was no request to the [c]ourt for a longer time made within

6

the 20 days after verdict was rendered as the statute say[s].
There was no briefing schedule that was ordered.

The court concluded that Meixner's JNOV Motion 2 "request [was] late." Then on May 26, 2022, at the postverdict motion hearing, the court reiterated that it would not be considering Meixner's untimely JNOV Motion 2. Nevertheless, Meixner still did not withdraw JNOV Motion 2. The court entered a judgment in favor of the Village on May 31, 2022.

¶13 On June 17, 2022, the Village filed Sanctions Motions 1 and 2 with the circuit court. After briefing and additional argument on the record, the court granted the Village's motions by an oral ruling on August 8, 2022, and by a written order on August 17, 2022.

¶14 On Sanctions Motion 1, as to the floodplain claim, the circuit court found that the "allegation does not have any evidentiary support, as ultimately the [court] dismissed the counterclaim on summary judgment for failure of [Meixner] to comply with the statutory notice requirements." As to the fire department claim, the court found that Meixner did not defend the claim on summary judgment and that it was "not warranted by existing law." The court further concluded that "based on [Meixner's] non-withdrawal and simultaneous non-defense of the claim, it appears that such claim was being presented for an improper purpose such as to harass or cause needless increase in the cost of litigation." As to Meixner's use of criminal statutes in his counterclaims, the court reasoned that "there would be no other reason to list criminal statutes in a civil matter, unless the party referencing such criminal statutes in their claim was trying to improperly intimidate or harass the opposing party." Ultimately, the court concluded that Meixner presented "all three of the instances … for an improper purpose, such as to harass or cause needless increase in the cost of litigation."

¶15 On Sanctions Motion 2—based on Meixner's JNOV Motion 2—the circuit court found in favor of the Village regarding all seven instances of conduct that the Village argued to be frivolous and/or harassing and asserted for improper purposes. The court stated:

> In summary, the [c]ourt finds that the [JNOV Motion 2] was presented for an improper purpose, such as to harass or cause needless increase in the cost of litigation. There does not appear to be any valid purpose to bring the motions and allegations consisting of instances one through seven, specifically such allegations on a motion for JNOV. Thus the [c]ourt concludes such allegations here were made for an improper purpose, such as to harass or cause needless increase in the cost of litigation.

> In support of its conclusion, in addition to [Meixner's] conduct here, the [c]ourt cites to history within this matter where [Mavity] was previously warned by the [c]ourt to not make over-the-top accusations of wrong doing that were not backed by actual facts.

> Further, and more disturbing, [Mavity] has a history in this case of conduct made with the stated intent of causing the Village to incur further legal fees.

> Further, the [c]ourt finds the counterclaims, defenses, and other legal contentions stated in the [JNOV Motion 2] were not warranted by existing law, were not a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

> Also the [c]ourt, further finds allegations and other factual contentions stated in the [JNOV Motion 2], that were specifically highlighted [in Sanctions Motion 2], do not have evidentiary support and are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

¶16 The circuit court awarded the Village attorney's fees it incurred for Sanctions Motions 1 and 2 in the amount of $7,895.19 and $18,549, respectively. These amounts were calculated using an increased lodestar amount "to have [a] deterrent effect in light of the facts and history of [Meixner's] counsel in this matter." Further, the court ordered that Mavity, not Meixner, would be

responsible for the fees because Mavity "was the violating actor in this matter." Meixner and Mavity appeal.[6]

## DISCUSSION

### I. Failure to State a Claim Upon Which Relief Could be Granted

¶17    First, Meixner argues that he was entitled to summary judgment on all of the Village's claims of "adverse possession, prescriptive and public use easements, and common law dedication" based on the Village's failure to meet Wisconsin's pleading standards within its complaint and amended complaints.[7]

---

[6] On July 7, 2022, Meixner filed a notice of appeal from the circuit court's May 31, 2022 judgment in appeal No. 2022AP1173. By order of August 31, 2022, this court placed that appeal on hold pending an anticipated appeal from the court's order granting the Village's motions for sanctions. Mavity filed a notice of appeal on his own behalf from the court's August 17, 2022 order in appeal No. 2022AP1528. *See Ziebell v. Ziebell*, 2003 WI App 127, ¶1, 265 Wis. 2d 664, 666 N.W.2d 107 ("[A]n attorney who is sanctioned by the circuit court for misconduct in a client's case must file his or her own notice of appeal in order to challenge the sanction …."). This court then consolidated the appeals on September 13, 2022.

[7] As an initial matter, we express our concern about the unprofessional briefing submitted by Meixner and Mavity in these cases. The briefing did not provide a coherent "statement of facts relevant to the issues presented for review, with appropriate references to the record." *See* WIS. STAT. RULE 809.19(1)(d). The arguments are also largely undeveloped or underdeveloped and, overall, are unsupported by legal authority and citations to "parts of the record relied on." *See* RULE 809.19(1)(e). In general, the briefing is disorganized—a fact that Mavity acknowledges in his reply but calls "excusable neglect." These errors are pervasive throughout the briefing. The errors have created unnecessary work for this court, given that the records are substantial and contain 898 documents, and in some cases have resulted in this court's inability to review an issue.

Further, we acknowledge the Village's observation that "Meixner's brief is peppered with accusations of Village counsel 'falsely' asserting matters to the courts." The Village also notes that Meixner accuses Loberg of altering a public record when the unaltered document is available in the records in these appeals. These are serious accusations of misconduct made in a flippant manner and unrelated to arguments before this court. These derogatory accusations are unnecessary and disrespectful to this court and to the appellate process.

(continued)

Thus, Meixner argues, the circuit court erred by denying Meixner's motion for summary judgment and by failing to comply with WIS. STAT. § 802.08 and the two-part summary judgment methodology described in *Tikalsky v. Friedman*, 2019 WI 56, 386 Wis. 2d 757, 928 N.W.2d 502.

¶18     In *Tikalsky*, our supreme court explained that the summary judgment methodology begins with the court examining "the pleadings to determine whether a claim for relief has been stated." *Id.*, ¶11 (citation omitted). "Plaintiffs must allege facts that plausibly suggest they are entitled to relief." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶31, 356 Wis. 2d 665, 849 N.W.2d 693. "In testing the sufficiency of a complaint, we take all facts pleaded by plaintiff[] and all inferences which can reasonably be derived from those facts as true." *Tikalsky*, 386 Wis. 2d 757, ¶11 (alteration in original; citation omitted). Importantly, the court observed that "we liberally construe pleadings 'with a view toward substantial justice to the parties.'" *Id.* (citation omitted).

¶19     In the second part of the summary judgment methodology, "[i]f a claim for relief has been stated," then "the inquiry … shifts to whether any factual issues exist." *Id.*, ¶12 (alteration in original; citation omitted). "Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

In his previous appeal in this case, we warned Meixner that "in the future" we expected "full compliance" with the Rules of Appellate Procedure. *Meixner*, No. 2021AP1323, ¶5 n.5. "Failure of a person to comply … with a requirement of these rules … is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate." WIS. STAT. RULE 809.83(2). These failures by Meixner and Mavity do not provide a basis for striking the briefs, but they do factor into our consideration of the Village's motion for sanctions, discussed in detail below.

entitled to a judgment as a matter of law.'" ***Id.*** (quoting WIS. STAT. § 802.08(2)). We review the circuit court's grant or denial of summary judgment de novo using this same methodology but benefiting from the court's analysis. ***Id.***, ¶10.

¶20    We note, first, as the Village does, that the only cause of action that Meixner appears to challenge is the Village's prescriptive easement claim, as he cites to only that legal standard in his briefing before this court. Specifically, Meixner argues that the Village "did not state allegations of fact supporting any of the first three elements of its claimed prescriptive easements in either its Amended Complaint or its Second Amended Complaint."

¶21    "[T]he sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." ***Data Key***, 356 Wis. 2d 665, ¶31.  We are unable to test the sufficiency of the Village's complaint in its entirety without a discussion of the substantive law that underlies each of the Village's other claims. We would need to abandon our neutrality to develop Meixner's arguments to determine whether and how the Village failed to allege facts that would plausibly suggest it was entitled to relief under the substantive law governing its other claims. *See **id.***  We decline to do so. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments."); ***State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

¶22    Thus, we conclude that the only cause of action that is before us is the Village's prescriptive easement claim. We further conclude that because the circuit court granted summary judgment to the Village as to Market Street on the theory of statutory dedication—not prescriptive easement—and denied summary

judgment as to Loop Road and Fish Market Street, the court's only summary judgment decision at issue involves the Ballfield Parking Area.[8]

¶23 To the extent Meixner intends to argue that the circuit court erred by failing to dismiss the Loop Road and Fish Market Street claims on summary judgment, as noted above, we conclude his claims are undeveloped. On appeal, Meixner states only that "'open and notorious' would require the Village to be using the [L]oop [R]oad and the Bachs' driveway (aka Fish Market Street) as if they were the owner; adverse use means that the use of [those areas] must be against the rights of Tyler or the Bachs," who were the former owners. (Formatting altered.) Meixner claims the Village "never provided any evidence or credible testimony in depositions or at trial alleging facts satisfying these elements." Meixner's arguments are unavailing.

¶24 First, whether the Village presented evidence at trial or in depositions has no bearing on a summary judgment decision based on a failure to state a claim for relief in the pleadings. Second, the circuit court determined that there were genuine issues of material fact as to Loop Road and Fish Market Street, based on the evidence the Village *did* present, that precluded summary judgment.

---

[8] We are unsure whether Meixner means to argue that the Village's second amended complaint should have been dismissed in its entirety on summary judgment based on a failure to allege facts supporting each of the elements for each claim. In other words, the Village's entire complaint should fail based on its failure to properly meet the pleading standards for the prescriptive easement claim, regardless of whether it sufficiently pled its other claims. To the extent that this is Meixner's argument, it is clearly not the standard by which courts view the sufficiency of a complaint. For each area of land in dispute, the Village alleged multiple causes of action—except, as noted above, for the Ballfield Parking Area. Therefore, to the extent that Meixner argues that summary judgment should have been granted to him and the Village's claims dismissed based on the Village's alleged failure to plead sufficient facts on one cause of action while the others remained, we disagree. Any defect in the pleadings related to one cause of action does not defeat the entire complaint based on a failure to state a claim, and Meixner does not present any legal authority to the contrary.

In general, Meixner's argument is undeveloped, and we would need to abandon our neutrality to develop his conclusory statements to determine whether and how the Village failed to allege facts that would plausibly suggest it was entitled to relief under the substantive law. *See Industrial Risk*, 318 Wis. 2d 148, ¶25; *Pettit*, 171 Wis. 2d at 647.

¶25 As to the Ballfield Parking Area, we conclude that the Village has alleged sufficient facts that "plausibly suggest [it is] entitled to relief." *See Data Key*, 356 Wis. 2d 665, ¶31; *Tikalsky*, 386 Wis. 2d 757, ¶16. "An easement by prescription requires the following elements, (1) adverse use hostile and inconsistent with the exercise of the titleholder's rights; (2) which is visible, open and notorious; (3) under an open claim of right; (4) and is continuous and uninterrupted for twenty years." *Ludke v. Egan*, 87 Wis. 2d 221, 230, 274 N.W.2d 641 (1979). Different from adverse possession, a prescriptive easement is based on a person's use of another's property rather than a person's possession of another's property. *Shellow v. Hagen*, 9 Wis. 2d 506, 511, 101 N.W.2d 694 (1960). "An act is hostile when it is inconsistent with the right of the owner and not done in subordination to it," *Ludke*, 87 Wis. 2d at 230, but "[h]ostile use is not an unfriendly intent and does not mean a controversy or a manifestation of ill will," *Shellow*, 9 Wis. 2d at 511. "A use which is permissive is subservient and not adverse." *Ludke*, 87 Wis. 2d at 230.

> When it is shown that there has been the use of an easement for 20 years, unexplained, it will be presumed to have been under a claim of right and adverse, and will be sufficient to establish a right by prescription, and to authorize the presumption of a grant, unless contradicted or explained.

*Shellow*, 9 Wis. 2d at 510 (citation omitted). However, the presumption may be rebutted. *Id.*

¶26    Overall, Meixner's arguments are replete with conclusory statements that the Village's second amended complaint does not meet our supreme court's pleading standards. However, he fails to address how the Village's pleadings were insufficient under the substantive law. Meixner does not advance any argument related to the Ballfield Parking Area. Indeed, he only minimally discusses Loop Road and Fish Market Street, as noted above. Meixner spends eight pages of his brief-in-chief discussing different items of alleged evidence—"alleged" because he does not cite to the records—but fails to explain how that evidence renders the Village's pleadings in the second amended complaint insufficient.[9]    Thus,

---

[9] We note that within Meixner's claim that he was entitled to summary judgment based on the Village's failure to meet proper pleading standards, he spends a substantial portion of his brief-in-chief arguing that the evidence presented at trial did not support the elements of a prescriptive easement. First, as noted above, this argument is irrelevant as to Loop Road and Fish Market Street because the Village still prevailed at trial on its public user and common law dedication claims. In particular, Meixner focuses on the fact that the Village's witnesses' testimony proves that the public used the property with permission, which defeats a prescriptive easement claim, but permission is not an affirmative defense to public user or common law dedication. *See Cohn v. Town of Randall*, 2001 WI App 176, ¶6, 247 Wis. 2d 118, 633 N.W.2d 674; *School Dist. of Hillsboro v. City of Hillsboro*, No. 2012AP888, unpublished slip op. ¶25 (WI App Dec. 6, 2012); *see also* WIS. STAT. RULE 809.23(3)(b) (stating that an unpublished opinion that is authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value). To the extent an argument could be made that permission *is* an affirmative defense to those claims, Meixner fails to make it.

Second, the question before us—as designated by Meixner—is whether the circuit court erred by denying summary judgment to Meixner, not whether the evidence presented at trial supported the prescriptive easement elements. This evidence was not before the court at the time of its summary judgment decision, and Meixner does not claim that it was.

To the extent that Meixner intended to lodge a separate challenge to the sufficiency of the evidence at trial, he has failed to properly develop that argument. Although Meixner alleges an evidentiary failure, Meixner does not explain what is lacking or what might satisfy as proof. He also failed to properly challenge the sufficiency of the evidence or develop that argument before the circuit court. *Compare* WIS. STAT. § 805.14(5)(b), *with* § 805.14(5)(c), (6).

(continued)

14

Meixner's argument is undeveloped, and we could decline to address it for that reason. *See Pettit*, 171 Wis. 2d at 646-47.

¶27 Nevertheless, we agree with the Village that it satisfied the "plausibility" standard in pleading a prescriptive easement as to the Ballfield Parking Area. *See Data Key*, 356 Wis. 2d 665, ¶31. In the Village's second amended complaint, it alleged as follows: (1) Meixner owns Lot 28 in the Village, and the Ballfield Parking Area is on Lot 28; (2) a fence has separated the disputed Ballfield Parking Area from Meixner's property since 1956; (3) the public regularly parked on the Ballfield Parking Area; (4) the Village mowed the Ballfield Parking Area from 1955-1987; (5) the mowing of the Ballfield Parking Area continued through at least 2015; (6) a 2014 survey showed a fence separating the Ballfield Parking Area from Meixner's side of the properties; (7) "[w]hen Meixner removed the fence adjacent to the disputed [Ballfield Parking Area], in 2015, his side was wooded, while the Village side was mowed"; and (8) in 2015, the public was parking on the Ballfield Parking Area at least once per month.

¶28 On appeal, the Village argues that

> [t]he foregoing facts show an unexplained use of an
> easement for longer than 20 years. The pled facts thus raise
> the legal presumption that the Village's use of the
> [Ballfield] Parking Area was adverse and under a claim of
> right. Moreover, maintaining and parking on the [Ballfield]

---

Regardless, the jury found that the Village had provided sufficient evidence supporting the elements of its prescriptive easement claims, and the circuit court denied Meixner's postverdict motion. "When reviewing a jury verdict, we affirm if the record contains 'any credible evidence' to support the verdict; this is 'even more true when the [circuit] court gives its explicit approval to the verdict by considering and denying postverdict motions.'" *See D.L. Anderson's Lakeside Leisure Co. v. Anderson*, 2008 WI 126, ¶22, 314 Wis. 2d 560, 757 N.W.2d 803 (citation omitted). In those situations, we afford special deference to the jury's determination, and we will not overturn the jury's verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Id.* (citation omitted).

> Parking Area is inconsistent with Meixner's record title. The longstanding fence also suggests adverse use on the Village side of the fence.

We agree with the Village that these pleaded facts suggest a plausible recovery of the Ballfield Parking Area by the Village under the theory of a prescriptive easement. Contrary to Meixner's arguments, the Village did not merely allege the elements of the claim—i.e., that the use was hostile or adverse or that it was open and notorious. Instead, the facts noted above are facts alleged by the Village that could establish each of those elements. As Meixner does not address or properly dispute this conclusion, his claim that the circuit court should have granted him summary judgment as to the Ballfield Parking Area fails.

*II. Failure to Comply with the Thirty-Year Recording Requirement in WIS. STAT. § 893.33*

¶29 Next, Meixner argues that he was entitled to summary judgment "dismissing the Village's claims of easements established after 20 years of use when it failed to record them with the Pierce County Register of Deeds within the 30[-]year time limit required by" WIS. STAT. § 893.33. According to Meixner, "[t]he Village provided no evidence at summary judgment or at trial that it had complied with … § 893.33 and recorded the claimed prescriptive easements with the Register of Deeds." On appeal, Meixner argues that "the 30-year time limit ended for the claimed easements on the Loop [R]oad and … Fish Market Street by 2003, and the claimed easement on the [Ballfield Parking Area] no later than 2005." For the reasons that follow, Meixner's claims fail.

¶30 The thirty-year recording requirement set forth in WIS. STAT. § 893.33(2) provides, in part, as follows:

> [N]o action affecting the possession or title of any real estate may be commenced … that is founded upon any … event occurring more than 30 years prior to the date

> of commencement of the action, unless … within 30 years after the date of the … event, there is recorded in the office of the register of deeds of the county in which the real estate is located some instrument expressly referring to the existence of the claim ….

"Under the 30-year recording requirement, a person who claims ownership rights as the result of an event loses the right to bring a claim based on that event if an instrument or notice of claim is not recorded within 30 years of the event." *O'Neill v. Reemer*, 2003 WI 13, ¶10, 259 Wis. 2d 544, 657 N.W.2d 403. In other words, as that statute applies here, once the time requirement for the Village's claim(s) had run, the Village then had thirty years to record some instrument expressly referring to the existence of that claim.

¶31 The statute also contains an owner-in-possession exception to the thirty-year recording requirement, wherein the statute "does not apply to any action commenced … by any person who is in possession of the real estate involved as owner at the time the action is commenced." WIS. STAT. § 893.33(5). This exception "applies to adverse possession claims," *O'Neill*, 259 Wis. 2d 544, ¶1; however, this court has stated that "the owner-in-possession exception in [§] 893.33(5) unambiguously excludes from its coverage holders of a prescriptive easement," *Schauer v. Baker*, 2004 WI App 41, ¶22, 270 Wis. 2d 714, 678 N.W.2d 258.

¶32 First, WIS. STAT. § 893.33 does not apply to some of the Village's claims. As noted above, the Village asserted multiple causes of action based on each of the disputed areas. We again reiterate that simply because § 893.33 may have barred one or more of those claims does not mean that the circuit court erred by not granting summary judgment in Meixner's favor when one or more claims may have remained viable. The jury found the elements of a prescriptive

17

easement as to Loop Road and Fish Market Street. It also found the elements of a public user easement under WIS. STAT. § 82.31,[10] and the court rendered judgment for both.

¶33    The Village argues that claims under WIS. STAT. § 82.31 fall under the WIS. STAT. § 893.33(5) exception and are not barred by the thirty-year recording requirement. *See **City of Prescott v. Holmgren***, 2006 WI App 172, ¶¶7-12, 295 Wis. 2d 627, 721 N.W.2d 153; § 893.33(5) ("This section also does not apply to real estate or an interest in real estate while the record title to the real estate or interest in real estate remains in the state or a political subdivision or municipal corporation of this state."). Meixner fails to address this argument in his reply. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession). Thus, we accept that even if Meixner is correct—the Village failed to record the easements pursuant to § 893.33—that fact is irrelevant for the purposes of Loop Road and Fish Market Street.

¶34    Second, even if the WIS. STAT. § 893.33(5) exception was not applicable, Meixner did not properly raise the issue of § 893.33(2) with regard to the Ballfield Parking Area, Loop Road, or Fish Market Street. As noted, the thirty-year recording requirement states that a person must record an instrument referring to the existence of the claim within thirty years or he or she "loses the right to bring a claim based on that event." *See **O'Neill***, 259 Wis. 2d 544, ¶10.

---

[10]    WISCONSIN STAT. § 82.31(2)(a) provides that "any unrecorded highway that has been worked as a public highway for 10 years or more is a public highway."

Thus, § 893.33(2) is absolutely a statute of limitations and is an affirmative defense. *See Statute of Limitations*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A law that bars claims after a specified period."); WIS. STAT. § 802.02(3); *State v. Watkins*, 2002 WI 101, ¶39, 255 Wis. 2d 265, 647 N.W.2d 244 ("An 'affirmative defense' is … 'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's … claim even if all allegations in the complaint are true.'" (citation omitted)); *see also Turner v. Taylor*, 2003 WI App 256, ¶¶15-16, 18, 268 Wis. 2d 628, 673 N.W.2d 716. On appeal, Meixner does not argue to the contrary.

¶35 Based on our review of the records, Meixner did plead the statute of limitations in his answer to the Village's second amended complaint. *See* WIS. STAT. § 802.02(3); *see also* WIS. STAT. § 802.06(2). There, he stated generally that "[t]he Second Amended Complaint is barred by the applicable statutes of limitations relating to its alleged claims of adverse possession, prescriptive easement or common law prescription." We agree with the Village, however, that Meixner's answer failed to cite WIS. STAT. § 893.33 or specify which of the Village's claims to which disputed property would be barred.

¶36 Regardless, on summary judgment, Meixner failed to allege any statute of limitations, or specifically WIS. STAT. § 893.33, within either his response to the Village's motion for summary judgment, his own motion for summary judgment, or in his supplemental brief in support of his motion for summary judgment. Meixner's only argument pertaining to § 893.33 was in his summary judgment reply brief, where he mentioned that the Village never recorded its claims and cited *Schauer*, but he failed to cite the actual statute or any evidence before the circuit court or argument establishing that the thirty-year time period had in fact run on any of the disputed land. *See TJ Auto LLC v. Mr. Twist*

19

*Holdings LLC*, 2014 WI App 81, ¶14, 355 Wis. 2d 517, 851 N.W.2d 831 ("[T]he burden of proof with respect to a statute of limitations is on the party asserting it." (citation omitted)); *see also* ***Bishop v. City of Burlington***, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656 ("A litigant must raise an issue with sufficient prominence such that the [circuit] court understands that it is being called upon to make a ruling.").

¶37     The next time Meixner appears to have mentioned WIS. STAT. § 893.33 was in a *letter* he filed with the circuit court four days before trial, asking for a trial postponement, which the court denied.  In that letter, Meixner relied on two documents to show that § 893.33 supposedly bars the Village's claims:  the April 8, 1964 Village fire department meeting minutes and the Village's second amended complaint.  Meixner argued that these documents "prove the [Village] missed its 30-year deadline for filing its public user and prescriptive easement claims with the Pierce County Register of Deeds," as "[w]e now know from the facts in the minutes and from the admission in the Second Amended Complaint discovered today, the 20-year time started no later than April 8, 1968.  That is 54 years ago."

¶38     Nevertheless, the Village argues—and Meixner does not dispute in his reply—that these documents were not presented to the jury.  Instead, the Village observes that "the earliest admitted exhibit showing Village use and maintenance of the roads is from 1974."  Meixner has not brought to our attention any other evidence that was presented *to the jury* establishing when the § 893.33 time periods would have run.  Meixner was required to present evidence to the jury to prove that the Village's claims—the ones that were actually before the jury—were time barred.  *See* ***TJ Auto LLC***, 355 Wis. 2d 517, ¶14.  He failed to do so.

¶39     Meixner also failed to sufficiently raise the issue with the circuit court after the verdict.  In his only *timely*[11] motion for judgment notwithstanding the verdict, Meixner argued that the Village "provided no evidence that it satisfied the 30[-]year recording requirements of WIS. STAT. § 893.33 and did not lose its right to continue its use of the Loop Road and the claimed Fish Market Street as prescriptive easements."  Meixner failed to develop his argument beyond this point.  As noted above, § 893.33 is an affirmative defense; therefore, it was not the Village's duty or burden to present evidence on this issue.  *See **TJ Auto LLC***, 355 Wis. 2d 517, ¶14.  It was Meixner's burden to prove that the Village's claims were time barred.  Thus, any alleged failure by the Village on this point was immaterial.

¶40     In summary, Meixner has failed to sufficiently argue and/or present evidence based on WIS. STAT. § 893.33 on summary judgment, at trial, and postverdict for the Ballfield Parking Area, Loop Road, and Fish Market Street.  Therefore, Meixner's claim that the circuit court should have granted him summary judgment as to those disputed areas based on the Village's failure to comply with the thirty-year recording requirement under § 893.33 fails.

*III. Failure to Establish Common Law Dedication*

¶41     Meixner next argues that he is "entitled to summary judgment dismissing the Village's claims of statutory and/or common law dedication of the

---

[11] We pause here to note that, on appeal, Meixner does not appear to challenge in his brief-in-chief the circuit court's decision not to consider JNOV Motion 2.  Then, for the first time in reply, Meixner states that "the Village's Response … implies that [JNOV Motion 2] was untimely rejected by the [circuit] court," but he claims—without citation to any legal authority and without addressing the court's reading of WIS. STAT. § 805.16(1)—that JNOV Motion 2 was timely.  We need not address arguments raised for the first time in a reply brief.  ***Bilda v. County of Milwaukee***, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661.

'disputed lands.'"[12]   We first note that based on Meixner's statement, this argument could conceivably pertain to Market Street, Loop Road, and Fish Market Street.   However, as to this issue, Meixner's arguments on appeal focus exclusively on Fish Market Street.[13]   According to Meixner, "[t]he Village produced no credible evidence or testimony at trial that [Bach] ever dedicated [Fish Market Street] to the Village as stated in the Jury Verdicts 17 and 18."[14]   He asserts that the Village "repeatedly and falsely claimed that Tyler gave the Village permission to raise Fish Market Street in July 1974," but that land was not owned

---

[12] "Dedication is defined to be the act of giving or devoting property to some proper object, in such a way as to conclude the owner." **Kennedy v. Barnish**, 244 Wis. 137, 141, 11 N.W.2d 682 (1943) (citation omitted). Wisconsin recognizes two types of dedication: statutory and common law. **Cohn**, 247 Wis. 2d 118, ¶6. "Common law dedication requires an explicit or implicit offer to dedicate land, and an acceptance of the offer by the municipality or by general public use." **Id.** "Intent to dedicate to the public use is an essential component of either statutory or common law dedication, since the municipality cannot accept that which is not offered in the first instance." **Id.**

"Informal acceptance of a common-law dedication may be accomplished either by the actions of 'the proper public authorities or by general public user.'" **City of Beaver Dam v. Cromheecke**, 222 Wis. 2d 608, 615, 587 N.W.2d 923 (Ct. App. 1998) (citation omitted). "The general public itself may accept an offer of dedication by using the offered property for a 'considerable length of time.'" **Id.** (citation omitted). Acceptance "may also be accomplished 'by implication from the acts of municipal officers.'" **Id.** at 617 (citation omitted). "There need be but little affirmative action to indicate an intention to accept a dedication." **Id.** (citation omitted).

[13] We note that in Meixner's reply brief, he mentions Loop Road within "Issue no. 3"—the common law dedication argument—for the first time. There, he mentions "the Village's false or misleading claims that Tyler dedicated the '[L]oop [R]oad' to the Village, and that Raymond and Marion Bach dedicated part of his property, 'Fish Market Street' to the Village." Meixner claims that he "bought Tyler's [L]ots 28, 29 and 30 that include the [L]oop [R]oad from the Tyler Family Trust on December 31, 2014," and "[i]t is obvious that that sale would not have occurred if Tyler had dedicated a portion of that land to the Village." We will not address this untimely argument. See **Bilda**, 292 Wis. 2d 212, ¶20 n.7.

[14] Special verdict question 17 asked: "Did Mr. Meixner's predecessor in title explicitly or implicitly intend to dedicate the Fish Market Street to the Village?" Special verdict question 18 asked: "Did the Village accept the dedication of Fish Market Street from Mr. Meixner's predecessor in title by explicit or implied acceptance or general public use?"

by Tyler, he could not authorize any maintenance or work, and the Village knew that Tyler never owned Fish Market Street. Accordingly, Meixner argues that despite knowing "the true facts," the Village "drafted the Special Verdicts nos. 17 and 18 approved by the [c]ourt and provided to the [j]ury." Further, Meixner asserts that the Village's statements to the jury pertaining to those special verdict questions "were also false statements."

¶42 Meixner's arguments are confusing and undeveloped. First, Meixner argues that he was entitled to summary judgment on the Village's common law dedication claim to Fish Market Street. However, this issue became a jury question, which Meixner presumably recognizes, despite his statement of the issue, because his arguments focus on issues at trial, not at the summary judgment stage. However, Meixner's argument that no credible evidence or testimony was presented at trial is entirely conclusory. He fails to identify what element of a common law dedication claim was not established, what evidence he believed should have been presented, or what evidence was presented that failed to establish any of the elements of the claim. Accordingly, we reject Meixner's purported challenge to the sufficiency of the evidence as to Fish Market Street, as it is not our responsibility to search the records to seek out evidence in support of a party's argument, especially within records of this volume. *See **Grothe v. Valley Coatings, Inc.***, 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463, *abrogated on other grounds by **Wiley v. M.M.N. Laufer Fam. Ltd. P'ship***, 2011 WI App 158, 338 Wis. 2d 178, 807 N.W.2d 236; ***United States v. Dunkel***, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record].").

¶43 To the extent that Meixner actually intends to argue that summary judgment should have been granted in his favor and the claim dismissed based on

23

the Village's allegedly false statement that Tyler gave permission to raise and improve Fish Market Street, that fact is irrelevant. Whether or not the Village misstated who owned Fish Market Street prior to Meixner, the circuit court did not grant summary judgment to the Village on that claim because it determined that there were genuine issues of material fact as to the Village's claim to Fish Market Street, and therefore that issue was submitted to the jury. Then, regardless of what evidence was provided at summary judgment, the Village made it very clear to the jury in its closing argument that "the road that was built in 1974 wasn't even on [Tyler's] land" and "so his permission doesn't mean a thing in this case." Meixner does not address this argument in reply, and we therefore deem it conceded. *See United Coop.*, 304 Wis. 2d 750, ¶39.

¶44 Finally, as to special verdict questions 17 and 18, Meixner does not explain how those questions were improper. He simply refers to them as "false" and as "false statements." However, the special verdict questions were discussed during the jury instruction and verdict conference, and Mavity stated he had no objection to either of those questions. Thus, Meixner has waived his right to object to the form of the special verdict. *See Estate of Hegarty v. Beauchaine*, 2006 WI App 248, ¶54, 297 Wis. 2d 70, 727 N.W.2d 857. In any event, the language of the questions merely asked the jury whether Meixner's predecessor in title had dedicated Fish Market Street and whether that offer was accepted. That was a factual issue at trial, and we see nothing objectionable about asking the jury to decide that issue. While Meixner does not appreciate that the jury resolved these questions against him, that in itself is not a ground for reversal.

*IV. Village's Discovery Violations*

¶45    Next, Meixner argues that he was entitled to summary judgment dismissing the Village's second amended complaint, and to an award of attorney fees, "based on the Village's repetitive discovery violations of" WIS. STAT. §§ 804.11 (requests for admission) and 804.12(1)(a) and (b) (failing to answer interrogatories or produce documents).  Meixner cites several documents in the records that he claims demonstrate the Village's "nonresponsive" answers to requests for admissions and interrogatories.  According to Meixner, the circuit court "failed to review and rule on the merits of the Village's discovery violations."  Finally, Meixner also argues that the court "denied to rule on the merits of Meixner's two motions to compel Production of Documents, but granted sanctions of $10,185 against Meixner and Mavity on the grounds that Meixner's motion[s] to compel were not 'substantially justified.'"

¶46    Meixner does not identify the motions on which he claims the circuit court failed to rule.  On appeal, he only lists the discovery documents he complains about without explaining why they were nonresponsive or what was wrong with them.  And, according to the Village, "Meixner never even brought a motion to compel answers to the discovery he complains about."  Instead, the Village explains, the court denied two of Meixner's motions to compel concerning different discovery than what Meixner now references.  Meixner fails to respond to the Village's assertion in reply.  We therefore deem it conceded.  *See **United Coop.***, 304 Wis. 2d 750, ¶39.

¶47    As to Meixner's document production motions, the entirety of Meixner's argument is that "[t]he circuit court exercised an erroneous discretionary decision in granting unjustified monetary sanctions on the grounds

that the two motions were not substantially justified." We agree with the Village that Meixner's arguments are undeveloped, lacking citation to legal authority, and entirely conclusory. *See Pettit*, 171 Wis. 2d at 646-47. We will address the issue no further.

*V. Sanctions Against Meixner and Mavity*

¶48 Finally, Mavity argues that the circuit court levied improper sanctions against him pursuant to WIS. STAT. § 802.05. "We review the [circuit] court's decision to impose sanctions and the appropriateness of the sanctions ordered under an erroneous exercise of discretion standard." *Lee v. GEICO Indem. Co.*, 2009 WI App 168, ¶16, 321 Wis. 2d 698, 776 N.W.2d 622. "[W]e will affirm the [circuit] court's decision if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion." *Id.* (citation omitted). "The issue is not whether we, as an original matter, would have imposed the same sanction as the circuit court; it is whether the circuit court exceeded its discretion in imposing the sanction it did." *Id.* (citation omitted). Whether the representations to the court violated § 802.05(2) "requires factual findings, and we accept factual findings made by the [circuit] court unless they are clearly erroneous." *Wisconsin Chiropractic Ass'n v. Chiropractic Examining Bd.*, 2004 WI App 30, ¶¶16, 33 n.12, 269 Wis. 2d 837, 676 N.W.2d 580.

¶49 First, Mavity claims that the Village "falsely accused [him] of forgery and Mavity was sanctioned by the circuit court." Mavity presents a "summary of argument" on this point, asserting that the court

> erroneously exercised its discretionary authority when it awarded monetary sanctions against Mavity because he requested an evidentiary hearing on his motion for sanctions against [counsel for the Village] and served a subpoena for the Village Clerk to testify at the evidentiary

hearing as to whether the handwriting on the certificate at issue was hers or Mavity's.

However, this assertion was more than a summary; it was Mavity's entire argument on this matter, and he fails to return to the issue in his reply.

¶50    Initially, we note that Mavity failed to identify for this court where in the records we could find the circuit court's decision on this issue.[15]  It is not our responsibility to search the records in support of Mavity's argument. *See Grothe*, 239 Wis. 2d 406, ¶6.  Regardless, Mavity's argument is completely undeveloped, and we therefore decline to address it.  *See Pettit*, 171 Wis. 2d at 646-47.

¶51    Second, Mavity argues that Sanctions Motions 1 and 2 and the circuit court's award of monetary sanctions were time barred by *Ten Mile Investments, LLC v. Sherman*, 2007 WI App 253, 306 Wis. 2d 799, 743 N.W.2d 442.  Mavity also claims that the court's sanctions award was an erroneous exercise of discretion.  We disagree in both respects.

¶52    The Village filed Sanctions Motions 1 and 2 pursuant to WIS. STAT. § 802.05, which describes the responsibilities of counsel and pro se litigants when making representations to the court.  *See* § 802.05(2).  Sanctions are discretionary and may be awarded where an attorney violates one or more of the responsibilities described in § 802.05(2). Sec. 802.05(3).  Importantly, the party seeking sanctions

---

[15]  The Village identified the circuit court's order and explained that the court's decision involved Meixner's motion for sanctions against the Village.  At a hearing, the court denied Meixner's motion and ordered that he pay fees and costs under WIS. STAT. § 802.05(3), not because Meixner asked for an evidentiary hearing but because the court found his motion frivolous.  The court issued an award of attorney's fees for the Village and found that Meixner and Mavity would be jointly liable for the award.

must first provide notice to the offending party that it would seek sanctions for a violation of the statute and the reasons why (the so-called "safe-harbor provision"). *See* § 802.05(3)(a)1.; *Ten Mile*, 306 Wis. 2d 799, ¶5. Notice is provided by serving the offending party with the motion without also simultaneously filing the motion with the circuit court. Sec. 802.05(3)(a)1. If the offending party does not withdraw or correct the offending document, then the party must wait at least twenty-one days before filing the motion with the court. *Id.* As long as proper notice was given, the court has the authority to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated sub. (2) or are responsible for the violation." Sec. 802.05(3).

¶53 It is undisputed that the Village followed the proper procedure for providing Meixner and Mavity with notice, that Meixner and Mavity did not withdraw or correct the offending documents,[16] and that the Village did not file the motions with the circuit court until the twenty-one-day safe-harbor period had passed.[17] Mavity argues, however, that pursuant to a statement in *Ten Mile*, a "postjudgment sanctions motion does not comply with the safe-harbor provision" of WIS. STAT. § 802.05. *See Ten Mile*, 306 Wis. 2d 799, ¶16. We disagree and find *Ten Mile* readily distinguishable.

¶54 The offending party in *Ten Mile* was not served pursuant to the safe-harbor provision with a motion prior to the judgment, *see id.*, ¶¶16-18, while

---

[16] We note that the Village asserts that "Meixner withdrew some references to criminal statutes in his counterclaims, but chose to keep some in."

[17] Sanctions Motion 1 was served on December 30, 2019, and Sanctions Motion 2 was served on May 20, 2022. The Village did not file either motion in the circuit court until June 17, 2022, which is more than the twenty-one-day safe-harbor window.

Meixner and Mavity were properly served with the motions well before judgment was entered, *see* ***Veit v. Frater***, No. 2018AP442, unpublished slip op. ¶40 (WI App May 29, 2019). Here, unlike in ***Ten Mile***, Meixner and Mavity did not receive an "informal warning"; they were provided "service of a motion." *See* ***Ten Mile***, 306 Wis. 2d 799, ¶18 (citation omitted).[18] Further, we agree with the Village that a court may not be able to determine the propriety of sanctions for frivolous claims without first addressing the substance of those claims. Thus, requiring *service* of sanctions motions before judgment—to possibly weed out frivolous claims—but not requiring the *filing* of those motions before judgment is not unreasonable under the statute, nor does the statute specifically prohibit it. *See* WIS. STAT. § 802.05; *cf.* ***Leske v. Leske***, 185 Wis. 2d 628, 630-34, 517 N.W.2d 538 (Ct. App. 1994) (reasoning that subsequent litigation regarding costs and fees does not defeat finality of an order or judgment). Thus, we conclude that Sanctions Motions 1 and 2 were not untimely.

¶55 Mavity next argues that the circuit court's award of sanctions against him was an erroneous exercise of discretion. In support of this proposition, he states that

> [Sanctions] Motion 1 is a duplicate of the same issues and claims of frivolous actions by [Mavity] that had been served or filed at least four times in the past two and one/half years and each time denied by the [c]ourt. Specifically, Motion 1, which was filed on [June 17, 2022],

---

[18] Importantly, this issue was discussed during the circuit court's oral ruling on the sanctions motions, and the court reached the same conclusion we have above. Within that discussion, the court noted that it was "troubled" because "[i]t seems like [Mavity] located [***Ten Mile Investments, LLC v. Sherman***, 2007 WI App 253, 306 Wis. 2d 799, 743 N.W.2d 442], cited it, but did not analyze it. And [was] wanting it to mean something that it actually doesn't mean." This comment is important because Mavity fails to present an argument on appeal for why ***Ten Mile*** is not distinguishable, despite the court's warning. He simply cites the case without any discussion and does not address the issue in his reply.

> with the same date, same attorneys' signatures and the same claims (each long ago resolved) is identical to the motion for sanctions of December 30, 2019.

Mavity cites ***Milwaukee Women's Medical Service, Inc. v. Scheidler***, 228 Wis. 2d 514, 598 N.W.2d 588 (Ct. App. 1999), for the proposition that "[b]ecause 'the exercise of discretion is not the equivalent of unfettered decision-making,' the record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case." ***Id.*** at 524-25 (citation omitted). He argues that the court's grant of Sanctions Motion 1 is the "equivalent of unfettered decision-making."

¶56 Again, Mavity's argument is entirely undeveloped. Although he argues that the Village had previously filed, and the circuit court had previously denied, the same claims multiple times, Mavity has not identified where in the records we could find either those filings or the court's decisions. Thus, we are unable to review his argument. *See **Grothe***, 239 Wis. 2d 406, ¶6; *see also **Dunkel***, 927 F.2d at 956. Nevertheless, we postulate that Mavity may actually be confused by the operation of the safe-harbor provision of WIS. STAT. § 802.05. He states that Sanctions Motion 1, "filed [June 17, 2022,]" is "identical" to the "motion for sanctions of December 30, 2019." This fact would make sense because Sanctions Motion 1 was *served* on Mavity on December 30, 2019, but it was not *filed* with the circuit court until June 17, 2022—providing a substantial safe-harbor period. Therefore, it is "identical" because it is the same motion.

¶57 Thus, Mavity has not explained how he believes that the circuit court erroneously exercised its discretion by granting Sanctions Motions 1 and 2.

*See **Pettit***, 171 Wis. 2d at 646-47. Given that the motions were timely filed and Mavity fails to show that the court erred, we affirm.[19]

*VI. Village's Motion for Sanctions for a Frivolous Appeal*

¶58 Before this court, the Village filed a motion for costs and attorney's fees pursuant to Wis. Stat. § 802.05 and Wis. Stat. Rule 809.25(3) against Mavity and/or Meixner for filing a frivolous appeal.[20] The Village argues that if we affirm the circuit court's order granting Sanctions Motions 1 and 2 in appeal No. 2022AP1528, then the Village is entitled to its reasonable attorney's fees and costs defending against that appeal. In other words, the Village is asking that we not only affirm the circuit court's sanction awards, but that we also award the costs and fees it incurred in defending those awards through this appeal. The Village recognizes, however, legal authority stating that to award attorney fees for

_____

[19] To the extent that Meixner or Mavity may have raised other issues in their briefs that we have not addressed, we conclude that any such issues are insufficiently developed, such that we cannot identify them, much less address them.

[20] Mavity submitted a twenty-five-page response to the Village's nine-page motion. The Village, thereafter, filed a motion for leave to file a reply, to strike, or, in the alternative, for oral argument based on its claim that Mavity's response "includes many arguments that speak to the merits of the sanctions against Mavity (and Mr. Meixner) in the [circuit] court" but "Mavity (or Meixner) did not include these robust (although flawed) arguments in their brief." The Village explained that due to the filing requirements under Wis. Stat. Rule 809.25, "the Village will have no opportunity to respond to these issues." We agreed with the Village and granted the motion to strike portions of Mavity's response, explaining that

> whether the Village is entitled to costs and fees against Mavity on his appeal of a sanction award depends solely upon whether Mavity prevails on the issues raised on appeal. Arguments related to portions of the sanction award not addressed in the parties' briefs therefore have no bearing on the question of costs and fees on appeal.

Accordingly, we denied the Village's requests to file a reply brief or for oral argument.

a frivolous appeal, we must conclude that the entire appeal is frivolous. *See **Howell v. Denomie***, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621. In that event, the Village argues that the entire appeal is frivolous given Meixner's irrelevant, undeveloped, conclusory, and confusing arguments, as well as Meixner's numerous failures under WIS. STAT. RULE 809.19.

¶59    Whether an appeal is frivolous is a question of law. ***Howell***, 282 Wis. 2d 130, ¶9. "Since the standard is objective, an appellate court looks to what a reasonable party or attorney knew or should have known under the same or similar circumstances." ***Id.***

¶60    Under WIS. STAT. RULE 809.25(3)(a), if this court finds an appeal to be frivolous, we "shall award to the successful party costs, fees, and reasonable attorney fees." The award may be assessed against the appellant, the attorney for the appellant, or both, equally. RULE 809.25(3)(b). An appeal is frivolous under RULE 809.25(3)(a) if we "find one or more of the following": (1) "The appeal … was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another"; or (2) "The party or the party's attorney knew, or should have known, that the appeal … was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." RULE 809.25(3)(c).

¶61    We begin with appeal No. 2022AP1528. There, as noted above, the circuit court granted Sanctions Motions 1 and 2 based on its conclusion that Mavity's conduct was frivolous, and we affirm that determination. *See supra* ¶57. This court has previously stated:

> [U]pon an appeal from a ruling of frivolousness, the
> reviewing court need not determine whether the appeal

> itself is frivolous before it can award appellate costs and reasonable attorney's fees. Rather, if the claim was correctly adjudged to be frivolous in the [circuit] court, it is frivolous per se on appeal.

*Riley v. Isaacson*, 156 Wis. 2d 249, 262, 456 N.W.2d 619 (Ct. App. 1990). Consequently, we held "that a party prevailing in the defense of an award of fees under [Wis. Stat. §] 802.05 is also entitled to a further award on appeal without a finding that the appeal itself is frivolous under [Wis. Stat.] Rule 809.25(3)." *Riley*, 156 Wis. 2d at 263. Mavity does not respond to this argument on appeal. We therefore conclude that because Mavity unsuccessfully challenged the court's finding of frivolousness in appeal No. 2022AP1528, Mavity should be sanctioned for filing the frivolous appeal.

¶62 As to appeal No. 2022AP1173, we conclude that Meixner's entire consolidated appeal is frivolous and that Meixner and Mavity should have known—based on the records in these cases and the arguments they advanced in the circuit court and before this court previously—that no reasonable basis exists, in either fact or law, to support their positions on appeal. Without rehashing each individual argument above, we observe that we fail to resolve the vast majority of the arguments on the merits. Instead, we conclude that Meixner and/or Mavity fail to develop an argument on the issues, that their arguments are irrelevant, or that Meixner and/or Mavity fail to present evidence from the records in support of their claims. Even where Meixner and/or Mavity could have addressed or developed issues on reply, they overwhelmingly failed to do so.

¶63 To the extent Meixner's claim regarding *Ten Mile* and the timing of the sanctions motions could be considered nonfrivolous given existing case law, we disagree. As noted, *see supra* note 18, Mavity was warned by the circuit court that he needed to "analyze" that case, not just cite it. Nevertheless, Mavity fails to

33

present an argument on appeal—let alone a good faith argument—for an extension of ***Ten Mile*** to the facts of this case. *See **Wisconsin Chiropractic Ass'n***, 269 Wis. 2d 837, ¶16 ("[T]he issue of whether a legal theory is justified by existing law or a good faith argument for a change in the law presents a question of law, and our review on this issue is therefore de novo.").

¶64  Overall, as an experienced attorney,[21] Mavity should have known that the arguments on appeal were without any reasonable basis in law or equity given his failure to abide by basic rules of appellate practice.  *See* WIS. STAT. RULE 809.83(2).  Thus, we find Meixner and Mavity's entire appeal frivolous. We therefore remand the matter to the circuit court to determine the amount of costs, fees, and reasonable attorney fees incurred by the Village in responding to Meixner and Mavity's appeal and to issue an award accordingly.[22]

*By the Court.*—Judgment and order affirmed and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[21] Mavity makes a point to identify his legal experience to this court.

[22] Within the Village's motion for costs and attorney's fees, the Village argues that it should also recover fees for its defense of the circuit court's fine issued on July 23, 2021, as Mavity challenges this award on appeal. *See supra* ¶¶49-50 & n.15.  Based on the records, it is clear that the court found Meixner's motion for sanctions against the Village to be frivolous, and Mavity unsuccessfully challenged that conclusion on appeal.  Accordingly, we agree and direct the circuit court to include this issue in its determination of appellate fees incurred by the Village.